1  ROBERT A. DOLINKO (SBN 076256)
   rdolinko@nixonpeabody.com
2  WILLIAM S. LISA (SBN 310541)
   wlisa@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 32nd Floor
4  San Francisco, CA 94111
5  Tel: 415-984-8200
   Fax: 415-984-8300
6
7  Attorneys for Defendants
   HERTZ LOCAL EDITION CORP.
8  THE HERTZ CORPORATION
9
10              UNITED STATES DISTRICT COURT
11              SOUTHERN DISTRICT OF CALIFORNIA
12
13 WENDELLYN MOORE,                  Case No.: **'19 CV 1027 GPC KSC**
   individually, and on behalf of other
14 members of the general public        **NOTICE OF REMOVAL OF CIVIL**
   similarly situated, and as an aggrieved **ACTION UNDER 28 U.S.C. § 1332(d)**
15 employee pursuant to the Private    **AND 28 U.S.C. § 1441; EXHIBITS**
16 Attorneys General Act ("PAGA"),
17        Plaintiff,
18
19        vs.
20 HERTZ LOCAL EDITION CORP., a
   Delaware corporation; THE HERTZ
21 CORPORATION, a Delaware
   corporation; and DOES 1 through 10,
22 inclusive,
23
24        Defendants
25
26
27
28
                          -1-

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF WENDELLYN MOORE AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants The Hertz Corporation ("Hertz") and Hertz Local Edition Corporation ("HLE") ("Defendants") file this Notice of Removal. The above-entitled case is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d) and is one that may be properly removed to this Court pursuant to 28 U.S.C. § 1441. In removing this case, Defendants in no way suggest that Hertz ever employed Plaintiff and they specifically deny that it ever did so. Nonetheless, as Plaintiff has alleged that both entities are liable for the claims she asserts, both entities are removing this action. In compliance with 28 U.S.C. § 1446(a), Defendants assert the following grounds for removal:

1.      On April 29, 2019, Plaintiff Wendellyn Moore ("Plaintiff") commenced the aforementioned action against Defendants by filing a Class Action Complaint in the Superior Court of the State of California, County of San Diego, entitled *Moore v. Hertz Local Edition Corp. et al.,* Case No. 37-2019-00022128 CU-OE-CTL (hereinafter the "State Court Action").

2.      True and correct copies of the Summons and Complaint for Damages (Class Action) ("Complaint"), along with the papers which accompanied the Complaint, are attached as Exhibit A hereto. Defendant HLE initially was served with the Summons and Complaint by personal service on its agent for service of process on May 1, 2019. Neither Defendant was served with the Summons or Complaint prior to this date. Defendants have no record of service on Hertz, but it filed an Answer in Superior Court.

3.      On May 31, 2019, Defendants filed in the State Court their respective Answers to the Complaint, as required by the California Code of Civil Procedure.

True and correct copies of those Answers are attached hereto as <u>Exhibit B</u> and are incorporated herein by this reference as if set forth in full.

4.      Defendants have not filed, served or received any papers or pleadings in the State Court Action other than those attached hereto as Exhibits A through B.

5.      This Notice is timely filed in that it is filed within thirty days of service of the Summons and Complaint on the first served of the Defendants, the only defendants that are named in the lawsuit.  *See* 28 U.S.C. § 1446(b) and Federal Rule of Civil Procedure 6.

6.      This action is removable under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), *et seq.*  The CAFA provides that the district courts "shall have original jurisdiction" over "a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).  The Class Action Complaint states that the nature of the action is a "class action" brought by Plaintiff Moore.  (Compl., *passim.*)

7.      Plaintiff Moore is, and was at all material times, a citizen of the State of California.  Plaintiff resides in San Diego County.  She has been and remains domiciled in California, and was and remains a resident and citizen of California. See Declaration of LaKeisha Carter filed herewith.

8.      Hertz is a Delaware corporation with its corporate headquarters and principal place of business in the State of Florida.  HLE is a Delaware corporation with its corporate headquarters and principal place of business in the State of Florida.  Defendants were not and are not a citizen of the State of California (as discussed further below).  See Declaration of LaKeisha Carter filed herewith.  Thus, Plaintiff is a "citizen of a State different from" Defendants under the CAFA.  28 U.S.C. § 1332(d)(2)(A).

9.      The CAFA requires that the putative class must have 100 or more class members for the district court to exercise jurisdiction.  28 U.S.C. § 1332(d)(5)(B).

In part, Plaintiff seeks to represent a class of all current and former Hertz and HLE employees in California employed as non-exempt hourly employees on or after May 2, 2017 (Compl., ¶ 56).  Plaintiff and the class she purports to represent seek pay for alleged unpaid overtime, premium pay for missed meal and rest breaks, and other payments for members of the putative class whose employment was terminated from Hertz and HLE.

10.    More than 1,800 individuals (inclusive of current and former employees) have worked for HLE as hourly, non-exempt employees in California between May 2, 2017 and April 29, 2019.  (*See* Declaration of Tia James ["James Decl."], filed herewith, at ¶ 3.) More than 3,000 individuals (inclusive of current and former employees) have worked for Hertz as hourly, non-exempt employees in California between May 2, 2017 and April 29, 2019. (*See id.*)  Thus, there are far more than the minimum 100 putative class members required by the CAFA for federal jurisdiction.  28 U.S.C. § 1332(d)(5)(B).

11.    The CAFA further requires that, for the district court to exercise jurisdiction, the matter in controversy must "exceed[] the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  When determining the amount in controversy, "the claims of the class members shall be aggregated."  28 U.S.C. § 1332(d)(6).

12.    Plaintiff, on behalf of the putative classes, alleges she and the class are entitled to recover (among other things): (1) unpaid overtime wages; (2) unpaid premium wages; (3) restitution under California Business & Professions Code Section 17200; (4) penalties pursuant to California Labor Code Sections 226, etc.; and (5) attorneys' fees.  (Compl., Prayer for Relief.)  The value of each of these items is to be included in the amount in controversy in the State Court Action under the CAFA.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (punitive damages); *Yeroushalmi v. Blockbuster, Inc.*, 2005 WL 2083008, at

-4-

*4-5 (C.D. Cal. July 11, 2005) (compensatory damages, punitive damages, attorneys' fees, and injunctive relief); *Berry v. American Express Publ'g Corp.*, 381 F. Supp. 2d 1118, 1123-1124 (C.D.Cal. 2005) (injunctive relief); *Rippee v. Boston Market Corp.*, 2005 U.S. Dist. LEXIS 39478, at *8 (S.D.Cal. Oct. 14, 2005) (Labor Code penalties).

13.    "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class [] actions into federal court" and "intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d) and Congress S. Rep. No. 109-14, at 42 (Feb. 28, 2005)).  Accordingly, the Supreme Court has unequivocally stated that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens* ("*Dart*"), 135 S. Ct. 547, 554 (2014).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.

14.    Defendants deny that Plaintiff and the class she purports to represent are entitled to either class certification or any recovery in this action, and by filing this Notice of Removal, Defendants do not waive any defenses that may otherwise be available to them.  Moreover, Defendants do not waive their position that Hertz never employed Plaintiff and that no community of interest exists between Hertz's and HLE's non-exempt employees.  Without waiving these positions, and in light of the allegations of Plaintiff's Complaint, Defendants' potential liability is as follows with respect to just a few of Plaintiff's causes of action:

a.    The potential liability to Hertz is approximately $5,527,029 for meal breaks allegedly not provided to California Hertz non-exempt employees.  The potential liability to HLE is approximately $2,341,777 for meal breaks allegedly not provided to California HLE non-exempt employees.  The Complaint alleges that Defendants' "uniform policy and/or practice [caused] . . . Plaintiff and other class

members [to] work[] through meal periods . . . For example, Plaintiff missed her meal periods four (4) times per week."  (Compl., ¶86.)  Defendants have calculated the amount in dispute conservatively by assuming only two missed meal breaks per work week.  The $5,527,029 in potential liability of Hertz is calculated by taking an average wage of $15.55 per hour x 2 missed meal breaks x 177,718 work weeks.  (James Decl. ¶¶ 3-4.)  The $2,341,777 in potential liability of HLE is calculated by taking an average wage of $14.35 per hour x 2 missed meal breaks x 81,595 work weeks. (*Id.*)

        b.      The potential liability to Hertz is approximately $5,527,029 and the potential liability to HLE is approximately $2,341,777 for rest breaks allegedly not provided to California Hertz and HLE non-exempt employees.  Plaintiff's Complaint alleges that "Defendants . . . failed to schedule rest periods, which, coupled with Defendants' failure to provide adequate break coverage, further led to Plaintiff and class members not being authorized and permitted to take rest periods.  For example . . . Plaintiff was never authorized or permitted to take a full and complete 10-minute rest period."  (Compl., ¶97.)  While the Complaint alleges Defendants failed to provide the putative class with compliant rest breaks virtually at all times across the board, Defendants have calculated the amount in dispute conservatively by assuming only two missed rest breaks per work week per employee.  The $5,527,029 in potential liability to Hertz is calculated by taking an average wage of $15.55 per hour x 2 missed rest breaks x 177,718 work weeks.  (*See* James Decl. ¶¶ 3-4.)  The $2,341,777 in potential liability to HLE is calculated by taking an average wage of $14.35 per hour x 2 missed rest breaks x 81,595 work weeks. (*See id.*)

        15.    The foregoing amounts total more than $15,736,000.  Moreover, these amounts do not even include Plaintiff's claims for unpaid overtime, penalties under Labor Code §226, attorneys' fees or the value of injunctive relief.  *See Lowdermilk*

1  *v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007); *Dittmar*,

2  2015 U.S. Dist. LEXIS 154809, at *13; *Fong v. Regis Corp.*, 2014 U.S. Dist. LEXIS

3  275, at *23 (N.D. Cal. Jan. 2, 2014).  "Courts in this circuit have held that . . .

4  removing defendants can reasonably assume that plaintiffs are entitled to attorney

5  fees valued at approximately twenty-five percent of the projected damages." *Fong*,

6  2014 U.S. Dist. LEXIS 275, at *23 (citing *Altamirano*, 2013 U.S. Dist. LEXIS

7  84236, at *34-35); *see also Dittmar*, 2015 U.S. Dist. LEXIS 154809, at *13-14

8  (citing *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has

9  established 25% of the common fund as a benchmark award for attorney fees."));

10  *Ford*, 2014 U.S. Dist. LEXIS 94059, at *6 (citing *Staton*).  Consequently, the

11  amount in dispute plainly exceeds the $5,000,000 threshold required under the

12  CAFA.

13      16.  Hertz and HLE are headquartered in Estero, Florida.  Their high-

14  ranking officers maintain their offices in Estero and direct and control the operations

15  of Hertz and HLE from that place of business.  (*See* Declaration of LaKeisha Carter

16  submitted herewith.)  There is no doubt that Florida, and not California, is Hertz's

17  and HLE's principal place of business.  See also *Hertz v. Friend*, 559 U.S. 77, 130

18  S. Ct. 1181 (2010) (court clarified that state where corporate headquarters is located

19  is state which it maintains its principal place of business).

20      17.  Based upon all the foregoing, neither Hertz nor HLE is a citizen of the

21  State of California, and neither are a "citizen of the State in which the action was

22  originally filed" and therefore the exceptions to removal under the CAFA set forth

23  in 29 U.S.C. §§1332(d)(4)(B) and 1332(d)(3) are inapplicable.

24  ///

25  ///

26  ///

27  ///

28

1    18.    For all of the foregoing reasons, Defendants The Hertz Corporation and

2  Hertz Local Edition Corp. respectfully submit that the State Court Action is

3  removable to this Court under 28 U.S.C. §§ 1332(d) and 1441(b).  Accordingly,

4  Defendants pray this action stand and remain removed from the Superior Court of

5  the State of California for the County of San Diego to this Court.

6  Dated:  May 31, 2019                    NIXON PEABODY LLP

7

8                                           By:    /s/ Robert A. Dolinko
                                                Robert A. Dolinko
9                                               William S. Lisa
                                                Attorneys for Defendants
10                                              HERTZ LOCAL EDITION CORP.
                                                THE HERTZ CORPORATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** *(AVISO AL DEMANDADO):* | *FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

HERTZ LOCAL EDITION CORP., a Delaware corporation; THE HERTZ CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

WENDELLYN MOORE, individually, and on behalf of other members of the general public similarly situated, and as an aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"),

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/29/2019** at 11:05:08 AM
Clerk of the Superior Court
By Jacqueline J. Walters, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* San Diego Superior Court | CASE NUMBER: *(Número del Caso):* 37-2019-00022128-CU-OE-CTL |
|---|---|

The Hall of Justice
330 West Broadway, San Diego, CA 92101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Bevin Pike, Capstone Law APC, 1875 Century Park East, Suite 1000, Los Angeles, CA 90067 (310) 556-4811

| DATE: ~~April 29, 2019~~ 04/30/2019 *(Fecha)* | Clerk, by *(Secretario)* J. Walters | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
   HERTZ LOCAL EDITION CORP., A Delaware CORPORATION;
3. ☑ on behalf of *(specify):*
   under: ☑ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL] Superior Court of California County of San Diego

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |
|---|---|---|

1   Bevin Allen Pike (SBN 221936)
    Bevin.Pike@capstonelawyers.com
2   Orlando Villalba (SBN 232165)
    Orlando.Villalba@capstonelawyers.com
3   Joseph Hakakian (SBN 323011)
    Joseph.Hakakian@capstonelawyers.com
4   Capstone Law APC
    1875 Century Park East, Suite 1000
5   Los Angeles, California 90067
    Telephone:    (310) 556-4811
6   Facsimile:    (310) 943-0396

7   Attorneys for Plaintiff Wendellyn Moore

8

9                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        FOR THE COUNTY OF SAN DIEGO

11

12  WENDELLYN MOORE, individually, and        Case No.:  37-2019-00022128-CU-OE-CTL
    on behalf of other members of the general
13  public similarly situated, and as an aggrieved   **CLASS ACTION COMPLAINT &**
    employee pursuant to the Private Attorneys   **ENFORCEMENT ACTION UNDER THE**
14  General Act ("PAGA"),                        **PRIVATE ATTORNEYS GENERAL ACT,**
                                                 **CALIFORNIA LABOR CODE §§ 2698, *ET***
15                 Plaintiff,                    ***SEQ.***

16        vs.                                    (1) Violation of California Labor Code §§ 510
                                                     and 1198 (Unpaid Overtime);
17  HERTZ LOCAL EDITION CORP., a                 (2) Violation of California Labor Code
    Delaware corporation; THE HERTZ                  §§ 1182.12, 1194, 1197, 1197.1, and 1198
18  CORPORATION, a Delaware corporation;             (Unpaid Minimum Wages);
    and DOES 1 through 10, inclusive,            (3) Violation of California Labor Code
19                                                   §§ 226.7, 512(a), and 1198 (Failure to
                  Defendants.                         Provide Meal Periods);
20                                               (4) Violation of California Labor Code
                                                     §§ 226.7 and 1198 (Failure to Authorize
21                                                   and Permit Rest Periods);
                                                 (5) Violation of California Labor Code §§
22                                                   226(a), 1174(d), and 1198 (Non-Compliant
                                                     Wage Statements and Failure to Maintain
23                                                   Payroll Records);
                                                 (6) Violation of California Labor Code §§ 201
24                                                   and 202 (Wages Not Timely Paid Upon
                                                     Termination);
25                                               (7) Violation of California Labor Code § 2802
                                                     (Unreimbursed Business Expenses);
26                                               (8) Civil Penalties for Violations of California
                                                     Labor Code, Pursuant to PAGA, §§ 2698,
27                                                   *et seq.*;
                                                 (9) Violation of California Business &
28

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**04/29/2019** at 11:05:08 AM

Clerk of the Superior Court
By Jacqueline J. Walters, Deputy Clerk

Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and
(10)   Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

Plaintiff Wendellyn Moore, individually and on behalf of all other members of the public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved employees, alleges as follows:

**JURISDICTION AND VENUE**

1.    This class action and state enforcement action is brought pursuant to California Code of Civil Procedure section 382 and California Labor Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief on behalf of Plaintiff, the State of California, and other current and former employees who worked for Defendants in California as non-exempt, hourly-paid employees and received at least one wage statement and against whom one or more violations of any provision in Division 2 Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth in this complaint.  The monetary damages, penalties, and restitution sought by Plaintiff exceed the minimal jurisdiction limits of the Superior Court and will be established according to proof at trial.  This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, section 10.  The statutes under which this action is brought do not specify any other basis for jurisdiction.  Plaintiff's share of damages, penalties, and other relief sought in this action does not exceed $75,000.

2.    This Court has jurisdiction over Defendants because Defendants are either citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

3.    Venue is proper in this Court because Defendants employ persons in this county, and employed Plaintiff this county, and thus a substantial portion of the transactions and occurrences related to this action occurred in this county.

4.    California Labor Code sections 2698, *et seq.*, the "Labor Code Private Attorneys General Act of 2004" ("PAGA"), authorize aggrieved employees to sue as private attorneys general their current or former employers for various civil penalties for violations of

Page 1

1   various provisions in the California Labor Code.

2   **THE PARTIES**

3       5.    Plaintiff is a resident of San Diego, in San Diego County, California. Defendants

4   employed Plaintiff as an hourly-paid, non-exempt employee from approximately November 8,

5   2017 to December 5, 2018. Plaintiff worked for Defendants as a Transportation Specialist at

6   Defendants' car rental office located at 3202 North Harbor Drive, San Diego, California.

7   Plaintiff typically worked eight (8) to eleven (11) hours or more per day, five (5) days per week,

8   and forty (40) to fifty-five (55) hours per week. At the end of her employment, Plaintiff was

9   compensated approximately $13.00 per hour. Plaintiff's job duties included, without limitation,

10   operating the cash register, cleaning rental cars, inspecting rental cars for damage, and

11   processing car rental reservations for customers and ridesharing-company Lyft.

12       6.    Defendant HERTZ LOCAL EDITION CORP. was and is, upon information and

13   belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose

14   employees are engaged throughout this county, the State of California, or the various states of

15   the United States of America.

16       7.    Defendant THE HERTZ CORPORATION was and is, upon information and

17   belief, a Delaware corporation, and at all times hereinafter mentioned, an employer whose

18   employees are engaged throughout this county, the State of California, or the various states of

19   the United States of America.

20       8.    Plaintiff is unaware of the true names or capacities of the Defendants sued herein

21   under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the

22   complaint and serve such fictitiously named Defendants once their names and capacities

23   become known.

24       9.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10

25   are the partners, agents, owners, shareholders, managers, or employees of HERTZ LOCAL

26   EDITION CORP. and THE HERTZ CORPORATION at all relevant times.

27       10.    Plaintiff is informed and believes, and thereon alleges, that each and all of the

28   acts and omissions alleged herein was performed by, or is attributable to, HERTZ LOCAL

EDITION CORP., THE HERTZ CORPORATION, and/or DOES 1 through 10 (collectively, "Defendants" or "HERTZ"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of HERTZ.

11.     At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

12.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

13.     Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff and class members. Each Defendant had the power to hire and fire Plaintiff and class members, supervised and controlled their work schedule and/or conditions of employment, determined their rate of pay, and maintained their employment records. Defendants suffered or permitted Plaintiff and class members to work and/or "engaged" Plaintiff and class members so as to create a common-law employment relationship. As joint employers of Plaintiff and class members, Defendants are jointly and severally liable for the civil penalties and all other relief available to Plaintiff and class members under the law.

14.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class members because Defendants have:

(a)     jointly exercised meaningful control over the work performed by Plaintiff and class members;

(b)  jointly exercised meaningful control over Plaintiff's and class members' wages, hours, and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff and class members;

(c)  jointly required that Plaintiff and class members perform work which is an integral part of Defendants' businesses; and

(d)  jointly exercised control over Plaintiff and class members as a matter of economic reality in that Plaintiff and class members were dependent on Defendants, who shared the power to set the wages of Plaintiff and class members and determined their working conditions, and who jointly reaped the benefits from the underpayment of their wages and noncompliance with other statutory provisions governing their employment.

15.  Plaintiff is informed and believes, and thereon alleges, that at all relevant times there has existed a unity of interest and ownership between Defendants such that any individuality and separateness between the entities has ceased.

16.  HERTZ LOCAL EDITION CORP., THE HERTZ CORPORATION, and DOES 1 through 10 are therefore alter egos of each other.

17.  Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them under the name HERTZ.

18.  Plaintiff further alleges, upon information and belief, that Defendants HERTZ LOCAL EDITION CORP. and THE HERTZ CORPORATION are alter egos of each other for the following reasons:

(a)  According to THE HERTZ CORPORATION's most recent SEC 10-K filing, HERTZ LOCAL EDITION CORP. is a wholly-owned subsidiary

CLASS ACTION COMPLAINT

1          of THE HERTZ CORPORATION;[1]

2     (b)    On the California Secretary of State's website

3          (https://businesssearch.sos.ca.gov/), HERTZ LOCAL EDITION CORP.

4          and THE HERTZ CORPORATION have the same entity address and/or

5          mailing address, which is "8501 Williams Road, Estero, Florida 33928";

6     (c)    According to their most recent "Statement of Information" forms filed

7          with the California Secretary of State, HERTZ LOCAL EDITION

8          CORP. and THE HERTZ CORPORATION share the same corporate

9          Secretary—Richard J. Frecker;

10    (d)    On information and belief, HERTZ LOCAL EDITION CORP. and THE

11         HERTZ CORPORATION utilize the same standardized employment

12         forms and issue the same employment policies; and

13    (e)    HERTZ LOCAL EDITION CORP. and THE HERTZ CORPORATION

14         share the same agent for service of process, CT Corporation.

## GENERAL ALLEGATIONS

16    19.    Defendants operate and franchise vehicle rental locations throughout the United

17 States with approximately 350 vehicle rental locations in California. Upon information and

18 belief, Defendants maintain a single, centralized Human Resources ("HR") department at their

19 corporate headquarters in Estero, Florida, which is responsible for recruiting and hiring of new

20 employees, and communicating and implementing Defendants' company-wide policies,

21 including timekeeping policies and meal and rest break policies, to employees throughout

22 California.

23    20.    In particular, Plaintiff and class members, on information and belief, received the

24 same standardized documents and/or written policies. Upon information and belief, the usage of

25 standardized documents and/or written policies, including new-hire documents, indicate that

26 Defendants dictated policies at the corporate level and implemented them company-wide,

27    [1] 10-K Annual Report 02/25/2019, The Hertz Corporation, https://ir.hertz.com/sec-
filings (last accessed April 16, 2019).

28

1  regardless of their employees' assigned locations or positions.  Upon information and belief,

2  Defendants set forth uniform policies and procedures in several documents provided at an

3  employee's time of hire.

4      21.    On information and belief, all transactions regarding hiring, terminations,

5  promotions, pay increases, and employee transfers, etc., relating to Defendants' California

6  employees were submitted to and processed by Defendants' HR department in Estero, Florida.

7  Additionally, on information and belief, Defendants' corporate records, business records, data,

8  and other information related to Defendants, including, in particular, HR records pertaining to

9  Defendants' California employees, are also maintained at Defendants' corporate headquarters in

10  Estero, Florida.

11      22.    Upon information and belief, Defendants maintain a centralized Payroll

12  department at its corporate headquarters in Estero, Florida, which processes payroll for all non-

13  exempt, hourly-paid employees working for Defendants at their various locations in California,

14  including Plaintiff and class members.  Based upon information and belief, Defendants issued

15  the same formatted wage statements to all non-exempt employees in California, irrespective of

16  their work location.  Upon information and belief, Defendants process payroll for departing

17  employees in the same manner throughout the State of California, regardless of the manner in

18  which each employee's employment ends.

19      23.    Defendants continue to employ non-exempt, hourly-paid employees within

20  California.

21      24.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

22  mentioned, Defendants were advised by skilled lawyers and other professionals, employees and

23  advisors knowledgeable about California labor and wage law, employment and personnel

24  practices, and about the requirements of California law.

25      25.    Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class

26  members were not paid for all hours worked because all hours worked were not recorded.

27      26.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

28  should have known that Plaintiff and class members were entitled to receive certain wages for

overtime compensation and that they were not receiving certain wages for overtime compensation.

27.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to be paid at a regular rate of pay, and corresponding overtime rate of pay, that included as eligible income all income derived from incentive pay, nondiscretionary bonuses, and/or other forms of compensation.

28.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

29.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the Labor Code or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiff and class members were not authorized and permitted to take compliant rest periods, nor did Defendants provide Plaintiff and class members payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and

1  accurate wage statements in accordance with California law.  In violation of the California

2  Labor Code, Plaintiff and class members were not provided complete and accurate wage

3  statements.

4       32.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

5  should have known that they had a duty to maintain accurate and complete payroll records,

6  including hours worked, in accordance with the Labor Code and applicable IWC Wage Order,

7  but willfully, knowingly, and intentionally failed to do so.

8       33.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

9  should have known that Plaintiff and class members were entitled to timely payment of all

10  wages earned upon termination of employment.  In violation of the California Labor Code,

11  Plaintiff and class members did not receive payment of all wages due, including, but not limited

12  to, overtime wages, minimum wages, meal and rest period premiums, and reporting time pay,

13  within permissible time periods.

14       34.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

15  should have known that Plaintiff and class members were entitled to timely payment of wages

16  during their employment.  In violation of the California Labor Code, Plaintiff and class

17  members did not receive payment of all wages, including, but not limited to, overtime wages,

18  minimum wages, meal and rest period premiums, and reporting time pay, within permissible

19  time periods.

20       35.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

21  should have known that Plaintiff and class members were entitled to receive their full wages due

22  without having to execute a release of claims.

23       36.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

24  mentioned, that Defendants knew or should have known that they had a duty to cover the costs

25  and expenses Plaintiff and class members incurred obtaining mandatory physical examinations

26  and/or drug tests, but willfully, knowingly, and intentionally failed to do so.

27       37.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

28  should have known that Plaintiff and class members were entitled to receive itemized wage

statements or separate written statements showing the amount of paid sick leave available, or paid time off provided in lieu of sick leave. In violation of the California Labor Code, Defendants failed to provide Plaintiff and class members with written itemized wage statements or separate written statements showing this information.

38.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and/or class members were entitled to receive all reporting time pay when Defendants required Plaintiff and/or class members were required to report to work but were put to work for less than half of their regular scheduled shift. In violation of the California Labor Code, Plaintiff and/or class members were not paid all reporting time pay.

39.    Plaintiff is informed and believes, and thereon alleges that Defendants knew or should have known that Plaintiff and class members were entitled to receive reimbursement for all business-related expenses and costs they incurred during the course and scope of their employment, and that they did not receive reimbursement of applicable business-related expenses and costs they incurred.

40.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that Defendants had a duty to provide Plaintiff and class members with written notice of the material terms of their employment with Defendants as required by the California Wage Theft Prevention Act, but willfully, knowingly, and intentionally failed to do so.

41.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff and class members for all hours worked, and that Defendants had the financial ability to pay such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely represented to Plaintiff and class members that they were properly denied wages, all in order to increase Defendants' profits.

42.    At all times herein set forth, PAGA provides that any provision of law under the Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and collected by the LWDA for violations of the California Labor Code and applicable IWC Wage

CLASS ACTION COMPLAINT

1    Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on

2    behalf of themselves and other current or former employees pursuant to procedures outlined in

3    California Labor Code section 2699.3.

4       43.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any

5    person who was employed by the alleged violator and against whom one or more of the alleged

6    violations was committed."

7       44.    Plaintiff and other current and former employees of Defendants are "aggrieved

8    employees" as defined by Labor Code section 2699(c) in that they are all Defendant's current or

9    former employees and one or more of the alleged violations were committed against them.

10      45.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved

11   employee, including Plaintiff, may pursue a civil action arising under PAGA after the following

12   requirements have been met:

13      (a)    The aggrieved employee or representative shall give written notice by

14             online filing with the LWDA and by certified mail to the employer of the

15             specific provisions of the California Labor Code alleged to have been

16             violated, including the facts and theories to support the alleged violation.

17      (b)    An aggrieved employee's notice filed with the LWDA pursuant to

18             2699.3(a) and any employer response to that notice shall be accompanied

19             by a filing fee of seventy-five dollars ($75).

20      (c)    The LWDA shall notify the employer and the aggrieved employee or

21             representative by certified mail that it does not intend to investigate the

22             alleged violation ("LWDA's Notice") within sixty (60) calendar days of

23             the postmark date of the aggrieved employee's notice.  Upon receipt of

24             the LWDA Notice, or if no LWDA Notice is provided within sixty-five

25             (65) calendar days of the postmark date of the aggrieved employee's

26             notice, the aggrieved employee may commence a civil action pursuant to

27             California Labor Code section 2699 to recover civil penalties.

28      46.    Pursuant to California Labor Code sections 2699.3(c), aggrieved employees,

1    through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision

2    other than those listed in Section 2699.5 after the following requirements have been met:

(a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)    The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

47.    On February 22, 2019, Plaintiff provided written notice by online filing to the LWDA and by Certified Mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3.  Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  Shortly thereafter, the LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-669135-19.  A true and correct copy of Plaintiff's written notice to the LWDA and Defendants dated February 22, 2019, is attached hereto as "Exhibit 1."

48.     As of the filing date of this complaint, over 65 days have passed since Plaintiff sent her notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

49.     Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 206.5, 222.5, 226(a), 226.7, 246, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

50.     Labor Code section 558 (a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

51.     Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

52.     As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage Order.

53.     Pursuant to PAGA, and in particular, California Labor Code sections 2699(a), 2699.3(a), 2699.3(c), and 2699.5, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other aggrieved employees, and the State of California against Defendants for violations of California Labor Code sections 201, 202, 203, 204, 206.5, 222.5, 226(a), 226.7, 246, 510, 512(a), 1174(d),

1   1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

2   **CLASS ACTION ALLEGATIONS**

3       54.    Plaintiff brings this action on her own behalf, as well as on behalf of each and

4   all other persons similarly situated, and thus seeks class certification under California Code of

5   Civil Procedure section 382.

6       55.    All claims alleged herein arise under California law for which Plaintiff seeks

7   relief authorized by California law.

8       56.    Plaintiff's proposed classes consist of and are defined as follows:

9           All persons who are or were employed by Defendants as non-exempt, hourly-paid employees in California at any time from
10           May 2, 2017 until the date of trial ("Class").

11       57.    Plaintiff's proposed subclass consists of and is defined as follows:
        All persons who worked for Defendants as non-exempt, hourly-
12           paid employees in California and who received at least one wage statement within one year prior to the filing of the initial
13           complaint until the date of trial ("Subclass").

14       58.    Members of the Class and Subclass are referred to herein as "class members."

15       59.    Plaintiff reserves the right to redefine the Class and Subclass and to add

16   additional subclasses as appropriate based on further investigation, discovery, and specific

17   theories of liability.

18       60.    There are common questions of law and fact as to class members that

19   predominate over questions affecting only individual members, including, but not limited to:

20           (a)    Whether Defendants required Plaintiff and class members to work over

21           eight (8) hours per day, over twelve (12) hours per day, or over forty

22           (40) hours per week and failed to pay all legally required overtime

23           compensation to Plaintiff and class members;

24           (b)    Whether Defendants failed to properly calculate the "regular rate" of

25           pay on which Plaintiff's and class members' overtime rate of pay was

26           based;

27           (c)    Whether Defendants failed to pay Plaintiff and class members at least

28           minimum wages for all hours worked;

(d)  Whether Defendants failed to provide Plaintiff and class members with meal periods;

(e)  Whether Defendants failed to authorize and permit Plaintiff and class members to take rest periods;

(f)  Whether Defendants provided Plaintiff and class members with complete and accurate wage statements as required by California Labor Code section 226(a);

(g)  Whether Defendants failed to pay earned overtime wages, minimum wages, meal and rest period premiums, and reporting time pay due to Plaintiff and class members upon their discharge;

(h)  Whether Defendants failed timely to pay overtime wages, minimum wages, meal and rest period premiums, and reporting time pay to Plaintiff and class members during their employment;

(i)  Whether Defendants unlawfully required Plaintiff and class members to execute releases of claims as a condition to receiving their earned wages;

(j)  Whether Defendants failed to pay Plaintiff and class members for the costs of mandatory physical examinations and/or drug testing;

(k)  Whether Defendants failed to provide Plaintiff and class members with written notice on wage statements listing requisite sick pay information set forth in Labor Code section 246(i);

(l)  Whether Defendants required Plaintiff and/or class members to report to work, but failed to provide them with work or provided them with less than half their scheduled day's work, without properly compensating them as required by California Code of Regulations, Title 8, section 11090, subsection 5;

(m)  Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses

1    incurred by them in the scope of their employment;

2    (n)    Whether Defendants failed to provide written notice of information

3    material to Plaintiff's and class members' employment with Defendants;

4    (o)    Whether Defendants engaged in unlawful and unfair business practices

5    in violation of California Business & Professions Code sections 17200,

6    *et seq.*; and

7    (p)    The appropriate amount of damages, restitution, or monetary penalties

8    resulting from Defendants' violations of California law.

9    61.    There is a well-defined community of interest in the litigation and the class

10    members are readily ascertainable:

11    (a)    Numerosity:  The class members are so numerous that joinder of all

12    members would be unfeasible and impractical.  The membership of the

13    entire class is unknown to Plaintiff at this time; however, the class is

14    estimated to be greater than one hundred (100) individuals and the

15    identity of such membership is readily ascertainable by inspection of

16    Defendants' employment records.

17    (b)    Typicality:  Plaintiff is qualified to, and will, fairly and adequately

18    protect the interests of each class member with whom she has a well-

19    defined community of interest, and Plaintiff's claims (or defenses, if

20    any) are typical of all class members as demonstrated herein.

21    (c)    Adequacy:  Plaintiff is qualified to, and will, fairly and adequately

22    protect the interests of each class member with whom she has a well-

23    defined community of interest and typicality of claims, as demonstrated

24    herein.  Plaintiff acknowledges that she has an obligation to make

25    known to the Court any relationship, conflicts or differences with any

26    class member.  Plaintiff's attorneys, the proposed class counsel, are

27    versed in the rules governing class action discovery, certification, and

28    settlement.  Plaintiff has incurred, and throughout the duration of this

1    action, will continue to incur costs and attorneys' fees that have been,

2    are, and will be necessarily expended for the prosecution of this action

3    for the substantial benefit of each class member.

4    (d)    Superiority:  The nature of this action makes the use of class action

5    adjudication superior to other methods.  A class action will achieve

6    economies of time, effort, and expense as compared with separate

7    lawsuits, and will avoid inconsistent outcomes because the same issues

8    can be adjudicated in the same manner and at the same time for the

9    entire class.

10    (e)    Public Policy Considerations:  Employers in the State of California

11    violate employment and labor laws every day.  Current employees are

12    often afraid to assert their rights out of fear of direct or indirect

13    retaliation.  Former employees are fearful of bringing actions because

14    they believe their former employers might damage their future

15    endeavors through negative references and/or other means.  Class

16    actions provide the class members who are not named in the complaint

17    with a type of anonymity that allows for the vindication of their rights

18    while simultaneously protecting their privacy.

19    **FIRST CAUSE OF ACTION**

20    **Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

21    **(Against all Defendants)**

22    62.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

23    and every allegation set forth above.

24    63.    Labor Code section 1198 makes it illegal to employ an employee under

25    conditions of labor that are prohibited by the applicable wage order.  California Labor Code

26    section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall

27    be the . . . standard conditions of labor for employees.  The employment of any employee . . .

28    under conditions of labor prohibited by the order is unlawful."

64.     California Labor Code section 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either time-and-one-half or two-times that person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

65.     Specifically, the applicable IWC Wage Order provides that Defendants are and were required to pay Plaintiff and class members working more than eight (8) hours in a day or more than forty (40) hours in a workweek, at the rate of time and one-half (1½) for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

66.     The applicable IWC Wage Order further provides that Defendants are and were required to pay Plaintiff and class members working more than twelve (12) hours in a day, overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

67.     California Labor Code section 510 codifies the right to overtime compensation at one and one-half (1½) times the regular rate of pay for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh (7th) day of work.

68.     During the relevant time period, Defendants willfully failed to pay all overtime wages owed to Plaintiff and class members. During the relevant time period, Plaintiff and class members were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours worked were not recorded.

69.     During the relevant period, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing its vehicle rental locations while discouraging accrual of overtime hours by employees. Defendants' company-wide understaffing of its

locations led to a failure to provide Plaintiff and class members with adequate meal period coverage. As a result, Plaintiff and class members were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period. Due to Defendants' understaffing, Plaintiff and class members worked through meal periods or had their meal periods interrupted by Defendants' management or customers, because there were not enough employees on duty to handle the workload. For example, Plaintiff was required to continue to perform her duties, such as processing customers' rental reservations and handling Lyft reservations, during unpaid meal periods because the rental location was shorthanded and no one else was available to assist customers.

70.    Further, because Defendants frowned upon employees accruing meal period penalties, Plaintiff and class members were instructed by Defendants' supervisors to clock in and out for their meal periods at designated times, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by Defendants. And, on other occasions, when employees did not manage to clock out at their designated meal period start times, they were subject to Defendants' supervisors falsifying their time records and deducting time for meal periods that were not taken. Defendants' supervisors would adjust employee time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, to reduce the meal penalties that would need to be paid by Defendants. Consequently, Plaintiff and class members performed work during meal periods for which they were not paid.

71.    Additionally, Defendants had a company-wide policy and/or practice of requiring Plaintiff and class members perform tasks off-the-clock after their scheduled shifts, such as answering customer questions, processing rental agreements after clocking out, and/or communicating with Defendants' supervisors while off-the-clock using their personal cellular phones. For example, Plaintiff spent approximately five (5) to ten (10) minutes each week reviewing and responding to text messages and calls from Defendants' supervisors, while off-the-clock.

72.    Defendants knew or should have known that as a result of these company-wide

practices and/or policies, Plaintiff and class members were working before and after their shifts and/or during their meal periods, and were suffered or permitted to perform work for which they were not paid. Defendants also knew, or should have known, that it did not compensate Plaintiff and class members for this off-the-clock work and unrecorded overtime hours.  Because Plaintiff and class members worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they worked.  Defendants' failure to pay Plaintiff and class members the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.

73.  Furthermore, Defendants did not pay Plaintiff and class members the correct overtime rate for the recorded overtime hours that they generated.  In addition to an hourly wage, Defendants paid Plaintiff and class members incentive pay, nondiscretionary bonuses, and/or other forms of remuneration.  However, in violation of the California Labor Code, Defendants failed to incorporate all compensation, including incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate.  Therefore, during times when Plaintiff and class members worked overtime and received these other forms of pay, Defendants failed to pay all overtime wages by paying a lower overtime rate than required.

74.  Specifically, Plaintiff and class members received incentive pay from Defendants based on their location's sales and customer service performance in the region. This incentive pay appeared on Plaintiff's and class members' wage statements as "Bonus HLE" and "Inc HLE."  In the same pay periods in which incentive pay and/or nondiscretionary bonuses were earned, Plaintiff and class members also worked overtime hours for which they were paid overtime wages.  However, Defendants failed to incorporate these other earned forms of pay into Plaintiff's and class members' regular rate of pay and, as a result, paid them at an incorrect and lower rate of pay for overtime hours worked. Specifically, Defendants paid them at 1.5 times their *hourly* rate of pay instead of at 1.5 times

1    their *regular* rate of pay.  Defendants' failure to properly calculate the overtime rate of pay

2    based on all remuneration paid has resulted in an underpayment of overtime wages to Plaintiff

3    and class members.

4         75.    Defendants' failure to pay Plaintiff and class members the balance of overtime

5    compensation and failure to include all applicable remuneration in calculating the regular rate

6    of pay for overtime pay, as required by California law, violates the provisions of California

7    Labor Code sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiff

8    and class members are entitled to recover their unpaid overtime compensation, as well as

9    interest, costs, and attorneys' fees.

10                          **SECOND CAUSE OF ACTION**

11   **Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

12                              **Minimum Wages**

13                          **(Against all Defendants)**

14         76.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

15   and every allegation set forth above.

16         77.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197,

17   1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the

18   minimum wage to be paid to employees, and the payment of a wage less than the minimum so

19   fixed is unlawful.  Compensable work time is defined in Wage Order No. 9 as "the time

20   during which an employee is subject to the control of an employer, and includes all the time

21   the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code.

22   Regs. tit. 8, § 11090(2)(H) (defining "Hours Worked").

23         78.    As set forth above, due to Defendants' company-wide understaffing, along with

24   its practice of requiring employees to avoid accruing overtime hours, and lack of meal period

25   coverage, Plaintiff and class members were forced to forego meal periods, have their meal

26   periods interrupted, and were otherwise not relieved of all duties during meal periods.  As a

27   further result of these policies and/or practices, class members were required to work off-the-

28   clock after clocking out at the end of their scheduled shifts to perform assigned tasks, such as

1    providing customer service.  In addition, Plaintiff and class members were required to perform

2    work off-the-clock before or after their shifts by responding to work-related calls and text

3    messages from Defendants' management.

4        79.    Moreover, Defendants maintained and implemented a company-wide policy of

5    requiring all employees to travel to a medical facility on their own time and using their own

6    personal vehicles to undergo mandatory drug testing and/or physical examinations.  However,

7    Defendants did not compensate Plaintiff and class members for the time they spent traveling

8    to and from the medical facilities or for the time they spent undergoing testing and/or

9    examinations.  At all times, Defendants were in control of scheduling the date and time for the

10   testing, selecting the provider or facility where the testing and/or examination was to take

11   place, and determining the scope of the testing and/or examination.  Plaintiff followed

12   Defendants' instructions and traveled to a medical facility designated by Defendants.  Plaintiff

13   spent approximately one (1) hour and 45 minutes traveling to and from the medical facility

14   and undergoing mandatory drug testing.  Defendants did not compensate Plaintiff for this time

15   and did not compensate class members for the time they spent traveling to and undergoing the

16   mandatory drug testing and/or physical examinations.

17       80.    Thus, Defendants did not pay at least minimum wages for off-the-clock hours

18   that qualified for overtime premium payment.  To the extent that these off-the-clock hours did

19   not qualify for overtime premium payment, Defendants did not pay at least minimum wages

20   for those hours worked off-the-clock in violation of California Labor Code sections 1182.12,

21   1194, 1197, 1197.1, and 1198.

22       81.    Defendants' failure to pay Plaintiff and class members minimum wages violates

23   California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to

24   California Labor Code section 1194.2, Plaintiff and class members are entitled to recover

25   liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

26   //

27   //

28   //

CLASS ACTION COMPLAINT

**THIRD CAUSE OF ACTION**

**Violations of California Labor Code, §§ 226.7, 512(a), and 1198—Meal Period Violations**

**(Against all Defendants)**

82.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

83.     At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012).

84.     At all relevant times herein set forth, California Labor Code section 226.7 and 512(a) provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

85.     At all relevant times herein set forth, Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

86.     First, as stated, Defendants had, and continue to have, a uniform policy and/or practice of understaffing along with discouraging employees from accruing overtime hours, which resulted in a lack of meal period coverage and prevented Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled.  Defendants' company-wide understaffing of their vehicle rental locations led to a failure to provide Plaintiff and class members with adequate meal period coverage.  As a result, Plaintiff and

Page 22

class members worked through meal periods because there were not enough employees on duty to handle the workload and customer demand. For example, Plaintiff missed her meal periods four (4) times per week due to a lack of coverage resulting from having too few employees on duty to handle the workload.

87. Second, because Defendants frowned upon employees accruing meal period penalties, Defendants management would adjust employee time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by Defendants. Consequently, Plaintiff and class members performed work during meal periods for which they were not paid.

88. Moreover, Defendants did not provide Plaintiff and class members with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. Plaintiff worked ten (10) or more hours per day regularly without being provided a second 30-minute meal period. Plaintiff and class members did not sign valid meal break waivers on days that they were entitled to meal periods and were not relieved of all duties.

89. Defendants knew or should have known that as a result of its systemic understaffing, strict policy of limiting meal period penalties, and willful falsification of meal period records, that Plaintiff and class members were not relieved of all duties to take timely, uninterrupted meal periods. Defendants did not pay Plaintiff and class members meal period premium wages when they were missed, late, short, and/or interrupted.

90. Because of these practices and/or policies, Plaintiff and class members have not received premium pay for all missed, late and interrupted meal periods. Alternatively, to the extent that Defendants did pay meal period premium wages to Plaintiff and class members, they did so at the incorrect rates. Because Defendants did not properly calculate Plaintiff's and class members' regular rates of pay by including all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, any premiums paid for meal period violations were also paid at an incorrect rate and resulted in an underpayment of meal period premium wages.

91.     Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

## FOURTH CAUSE OF ACTION

### Violation of California Labor Code §§ 226.7 and 1198—Rest Break Violations

### (Against all Defendants)

92.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

93.     At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7 and 1198 were applicable to Plaintiff's and class members' employment by Defendants.

94.     At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

95.     At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties — including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

96.     Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(b), Plaintiff and class members were entitled to recover from Defendants one (1)

1  additional hour of pay at their regular rates of pay for each work day that a required rest

2  period was not authorized and permitted.

3      97.      During the relevant period, Defendants' company-wide systemic understaffing

4  prevented Plaintiff and class members from being relieved of all duty to take compliant rest

5  periods.  Defendants also failed to schedule rest periods, which, coupled with Defendants'

6  failure to provide adequate break coverage, further led to Plaintiff and class members not

7  being authorized and permitted to take rest periods.  For example, when her vehicle rental

8  location was busy with high customer demand, Plaintiff missed her rest periods.  In fact,

9  Plaintiff always worked straight through her shifts without taking any ten 10-minute rest

10  periods.  As a result, Plaintiff and class members would work shifts in excess of 3.5 hours, in

11  excess of 6 hours, and/or in excess of 10 hours without being permitted and authorized to take

12  all 10-minute rest periods to which they were entitled.  Throughout her employment, Plaintiff

13  was never authorized or permitted to take a full and complete 10-minute rest period.

14      98.      Defendants also have engaged in a company-wide practice and/or policy of not

15  paying all rest period premiums owed when compliant rest periods are not authorized or

16  permitted.  Because of this practice and/or policy, Plaintiff and class members have not

17  received premium pay for all missed rest periods.  Alternatively, to the extent that Defendants

18  did pay rest period premium wages to Plaintiff and class members, they did so at the incorrect

19  rates.  Because Defendants did not properly calculate Plaintiff's and class members' regular

20  rates of pay by including all forms of compensation, such as incentive pay, nondiscretionary

21  bonuses, and/or other forms of remuneration, any premiums paid for rest period violations

22  were also paid at an incorrect rate and resulted in an underpayment of rest period premium

23  wages.

24      99.      Defendants' conduct violates the applicable IWC Wage Order and California

25  Labor Code sections 226.7 and 1198.  Plaintiff and class members are therefore entitled to

26  recover from Defendants one (1) additional hour of pay at the employee's regular rate of

27  compensation for each work day that a compliant rest period was not authorized and

28  permitted.

## FIFTH CAUSE OF ACTION

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

100.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

101.    At all relevant times herein, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

102.    During the relevant time period, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements. For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including overtime rates of pay, and the corresponding number of hours worked at each hourly rate. Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

103.    Because Defendants deducted time from Plaintiff's and Subclass members' records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and 226(a)(5), respectively. For the same reason, Defendants failed to accurately list the total number of the hours worked by Plaintiff and Subclass members, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

104.    Further, because Defendants did not calculate Plaintiff's and Subclass

1   members' regular rate of pay correctly for purposes of paying overtime, Defendants did not

2   list the correct amount of gross wages earned by Plaintiff and Subclass members in

3   compliance with section 226(a)(1). For the same reason, Defendants failed to list the correct

4   amount of net wages earned by Plaintiff and Subclass members in violation of section

5   226(a)(5). Defendants also failed to correctly list all applicable hourly rates in effect during

6   the pay period, namely, correct overtime rates of pay and correct rates of pay for premium

7   wages, in violation of section 226(a)(9).

8        105.    The wage statement deficiencies also include, without limitation, failing to list

9   the number of piece-rate units earned and any applicable piece rate if the employee is paid on

10  a piece-rate basis; failing to list all deductions; failing to list the name of the employee and

11  only the last four digits of his or her social security number or an employee identification

12  number other than a social security number; failing to list the name and address of the legal

13  entity that is the employer; failing to list the inclusive dates of the period for which aggrieved

14  employees were paid; and/or failing to state all hours worked as a result of not recording or

15  stating the hours they worked off-the-clock.

16       106.    California Labor Code section 1174(d) provides that "[e]very person employing

17  labor in this state shall … [k]eep a record showing the names and addresses of all employees

18  employed and the ages of all minors" and "[k]eep, at a central location in the state or at the

19  plants or establishments at which employees are employed, payroll records showing the hours

20  worked daily by and the wages paid to, and the number of piece-rate units earned by and any

21  applicable piece rate paid to, employees employed at the respective plants or

22  establishments…" During the relevant time period, and in violation of Labor Code section

23  1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and

24  Subclass members showing the daily hours they worked and the wages paid thereto as a result

25  of failing to record the off-the-clock hours that they worked.

26       107.    California Labor Code section 1198 provides that the maximum hours of work

27  and the standard conditions of labor shall be those fixed by the Labor Commissioner and as

28  set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he

1    employment of any employees for longer hours than those fixed by the order or under

2    conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC

3    Wage Order, employers are required to keep accurate time records showing when the

4    employee begins and ends each work period and meal period. During the relevant time

5    period, Defendants failed, on a company-wide basis, to keep accurate records of meal period

6    start and stop times for Plaintiff and Subclass members, in violation of section 1198. Also, in

7    light of Defendants' failure to provide Plaintiff and Subclass members with second 30-minute

8    meal periods to which they were entitled, Defendants kept no records of meal start and end

9    times for second meal periods.

10    108.    Plaintiff and Subclass members are entitled to recover from Defendants the

11    greater of their actual damages caused by Defendants' failure to comply with California Labor

12    Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per

13    employee.

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon**

**Termination**

**(Against all Defendants)**

18    109.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

19    and every allegation set forth above.

20    110.    At all times relevant herein set forth, Labor Code sections 201, 202, and 203

21    provide that if an employer discharges an employee, the wages earned and unpaid at the time

22    of discharge are due and payable immediately, and that if an employee voluntarily leaves his

23    or her employment, his or her wages shall become due and payable not later than seventy-two

24    (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of

25    his or her intention to quit, in which case the employee is entitled to his or her wages at the

26    time of quitting.

27    111.    Defendants have a company-wide practice or policy of paying departing

28    employees their final wages on the next regular pay cycle, instead of adhering to the time

1  requirements set forth in Labor Code sections 201 and 202. For example, Plaintiff resigned

2  from her employment with Defendants on December 5, 2018, but did not receive her final

3  wages within seventy-two (72) hours. Instead, Defendants tendered Plaintiff's final wages to

4  her over one (1) week later on December 13, 2018. Thus, Defendants failed to pay Plaintiff

5  her final wages within seventy-two (72) hours, in violation of Labor Code section 202.

6       112.   Moreover, Defendants willfully failed to pay Plaintiff and class members who

7  are no longer employed by Defendants the earned and unpaid wages set forth above, including

8  but not limited to, overtime wages, minimum wages, and meal and rest period premium

9  wages, either at the time of discharge, or within seventy-two (72) hours of their leaving

10  Defendants' employ.

11       113.   Defendants' failure to pay Plaintiff and those class members who are no longer

12  employed by Defendants their wages earned and unpaid at the time of discharge, or within

13  seventy-two (72) hours of their leaving Defendant's employ, violates Labor Code sections 201

14  and 202. Plaintiff and class members are therefore entitled to recover from Defendants the

15  statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a

16  thirty (30) day maximum pursuant to California Labor Code section 203.

17  **SEVENTH CAUSE OF ACTION**

18  **Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**

19  **(Against all Defendants)**

20       114.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

21  and every allegation set forth above.

22       115.   At all times herein set forth, California Labor Code section 2802 provides that

23  an employer must reimburse employees for all necessary expenditures and losses incurred by

24  the employee in the performance of his or her job. The purpose of Labor Code section 2802 is

25  to prevent employers from passing off their cost of doing business and operating expenses on

26  to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144

27  (2014). The applicable wage order, IWC Wage Order 9-2001, provides that: "[w]hen tools or

28  equipment are required by the employer or are necessary to the performance of a job, such

tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

116.    First, as mentioned, Defendants had a company-wide policy and/or practice of requiring Plaintiff and class members to travel in their own personal vehicles to medical clinics to undergo mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses. For example, Plaintiff followed Defendants' instructions, traveled for approximately 30 miles roundtrip, and underwent the drug test. Although Defendants required Plaintiff and class members to undergo the drug testing and/or physical examinations, Defendants failed to reimburse them for these expenses.

117.    Second, during the relevant time period, Defendants, on a company-wide basis, required that Plaintiff and class members use their own personal vehicles to attend mandatory training and/or conferences and carry out their job duties, but failed to reimburse them for the cost of their work-related vehicle and travel expenses. For example, in July 2018, Plaintiff drove 14 miles roundtrip to attend a mandatory training at Defendants' vehicle rental location in National City, California, but was not reimbursed for her mileage to and from the training. Although Defendants required Plaintiff and class members to utilize their own vehicles and incur associated costs to attend mandatory training and/or conferences, Defendants failed to reimburse them for these necessary expenses.

118.    Third, Defendants, on a company-wide basis, required that Plaintiff and class members use their own personal cellular phones and/or cellular phone data to carry out their job duties, but failed to reimburse them for the costs of their work-related cellular phone expenses. For example, Plaintiff frequently used her personal cellular phone to discuss work-related issues with Defendants' supervisors on a daily basis. During her employment, Defendants' supervisors routinely texted messages to Plaintiff both before and after her shifts regarding work items, tasks completed, and tasks to perform. Although Defendants required Plaintiff to regularly utilize her personal cellular phone to carry out work-related

1 | responsibilities, Defendants failed to reimburse her for this cost.

2 |     119.   Defendants could have provided Plaintiff and class members with the actual

3 | tools for use on the job, including company phones and company vehicles, to be used for

4 | fulfilling work-related tasks, or reimbursed employees for their actual cellular phone usage,

5 | travel expenses, and mileage. Instead, Defendants passed these operating costs off onto

6 | Plaintiff and class members. At all relevant times, Plaintiff did not earn at least two (2) times

7 | the minimum wage. Thus, Defendants had, and continues to have, a company-wide policy

8 | and/or practice of not reimbursing employees for expenses necessarily incurred.

9 |     120.   Defendants' company-wide policy and/or practice of passing on its operating

10 | costs on to Plaintiff and class members is in violation of California Labor Code section 2802.

11 | Defendants have intentionally and willfully failed to fully reimburse Plaintiff and class

12 | members for necessary business-related expenses and costs.

13 |     121.   Plaintiff and class members are entitled to recover from Defendants their

14 | business-related expenses incurred during the course and scope of their employment, plus

15 | interest.

16 | **EIGHTH CAUSE OF ACTION**

17 | **For Civil Penalties Pursuant to California Labor Code §§ 2698, *et seq.***

18 | **(Against all Defendants)**

19 |     122.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

20 | and every allegation set forth above.

21 |     123.   California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover

22 | civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section

23 | 2699.5. Section 2699.5 enumerates Labor Code sections 201, 202, 203, 204, 206.5, 222.5,

24 | 226(a), 226.7, 510, 512(a), 1174(d), 1194, 1197, 1197.1, 1198, and 2802. Labor Code section

25 | 2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for

26 | violations of those Labor Code sections not found in section 2699.5, including sections 246,

27 | 1182.12, and 2810.5.

28 |     124.   Defendants' conduct, as alleged herein, violates numerous sections of the

CLASS ACTION COMPLAINT

California Labor Code, including, but not limited to, the following:

(a)  Violation of Labor Code sections 510, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime pay and failure to properly calculate the overtime rates paid to Plaintiff and other aggrieved employees as set alleged herein;

(b)  Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked as alleged herein;

(c)  Violation of Labor Code sections 226.7, 512, 1198, and the applicable IWC wage order for Defendants' failure to provide Plaintiff and other aggrieved employees with meal periods, as alleged herein;

(d)  Violation of Labor Code sections 226.7, 1198, and the applicable IWC wage order for Defendants' failure to authorize and permit Plaintiff and other aggrieved employees to take rest periods, as alleged herein;

(e)  Violation of Labor Code sections 226(a), 1198, and the applicable IWC wage order for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees, as alleged herein;

(f)  Violations of Labor Code sections 1174(d), 1198, and the applicable IWC wage order for failure to maintain payroll records as set forth below;

(g)  Violation of Labor Code section 204 for failure to pay all earned wages during employment as set forth below;

(h)  Violation of Labor Code sections 201, 202, and 203 for failure to pay all earned wages upon termination as alleged herein;

(i)  Violation of Labor Code section 206.5 for requiring Plaintiff and other aggrieved employees to execute a release of claims as a condition to receiving wages due to them, as set forth below;

CLASS ACTION COMPLAINT

1    (j) Violation of Labor Code section 222.5 for failing to to compensate

2      Plaintiff and other aggrieved employees for mandatory physical

3      examinations and/or drug testing, as set forth below;

4    (k) Violation of Labor Code section 246 for failure to provide written notice

5      of paid sick leave available, or paid time off, as set forth below;

6    (l) Violation of Labor Code section 1198 and the applicable IWC wage order

7      for failure to pay reporting time pay when other aggrieved employees

8      were put to work for less than half of their regular scheduled shifts, as set

9      forth below;

10    (m) Violation of Labor Code section 2802 for failure to reimburse Plaintiff

11      and other aggrieved employees for all business expenses necessarily

12      incurred, as alleged herein; and

13    (n) Violation of Labor Code section 2810.5(a)(1)(A)-(C) for failure to

14      provide written notice of information material to Plaintiff's and other

15      aggrieved employees' employment with Defendants, as set forth below.

16   125. At all relevant times herein set forth, California Labor Code section 204 requires

17 that all wages earned by any person in any employment between the 1st and the 15th days,

18 inclusive, of any calendar month, other than those wages due upon termination of an employee,

19 are due and payable between the 16th and the 26th day of the month during which the labor was

20 performed. Labor Code section 204 further provides that all wages earned by any person in any

21 employment between the 16th and the last day, inclusive, of any calendar month, other than

22 those wages due upon termination of an employee, are due and payable between the 1st and the

23 10th day of the following month.

24   126. At all relevant times herein, California Labor Code section 204 also requires that

25 all wages earned for labor in excess of the normal work period shall be paid no later than the

26 payday for the next regular payroll period. Alternatively, at all relevant times herein, Labor

27 Code section 204 provides that the requirements of this section are deemed satisfied by the

28 payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more

1    than seven (7) calendar days following the close of the payroll period.

2        127.    During the relevant time period, Defendants willfully failed to pay Plaintiff and

3    other aggrieved employees all wages due to them within any time period specified by California

4    Labor Code section 204 including, but not limited to, overtime wages, minimum wages, meal

5    and rest period premium wages, and reporting time pay.  Plaintiff and other aggrieved

6    employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 210

7    and/or 2699(a), (f)-(g).

8        128.    California Labor Code section 206.5 prohibits employers from requiring

9    employees to execute releases of a claim or right "on account of wages due, or to become due,

10   or made as an advance on wages to be earned, unless payment of those wages has been made.  A

11   release required or executed in violation of the provisions of this section shall be null and void

12   as between the employer and the employee."

13       129.    During the relevant time period, Defendants required Plaintiff and other

14   aggrieved employees to release their claims for meal and/or rest period violations as a condition

15   to receiving their paychecks.  For example, at the end of each work week, Defendants required

16   Plaintiff and other aggrieved employees to sign "Station Time Cards" stating, "[b]y signing

17   below, I certify and declare that . . . that I have taken all of the rest periods and duty-free meal

18   periods to which I was entitled during the covered period."  Defendants compelled Plaintiff and

19   other aggrieved employees to sign these false verifications when they, in fact, were not provided

20   all meal and/or rest periods during the work week.  Defendants' policy and practice of requiring

21   Plaintiff and other aggrieved employees to release their claims for meal and/or rest period

22   violations as a condition to receiving their wages is in violation of California Labor Code

23   section 206.5.  Plaintiff and other aggrieved employees are therefore entitled to recover civil

24   penalties pursuant to Labor Code section 2699(a), (f)-(g).

25       130.    At all times herein set forth, California Labor Code section 222.5 requires

26   employers to pay for the costs an employee incurs for obtaining any required medical or

27   physical examination.

28       131.    During the relevant time period, Defendants implemented, on a company-wide

CLASS ACTION COMPLAINT

1    basis, an employer-imposed requirement that Plaintiff and other aggrieved employees undergo

2    mandatory drug tests and/or physical examinations, but required them to do so at their own

3    expense. As stated, Defendants had a company-wide policy requiring that all employees,

4    including Plaintiff and other aggrieved employees, travel to a specified medical facility on their

5    own time and use their own means of transportation to undergo drug testing. At all times,

6    Defendants were in control of scheduling the date and time for the testing, selecting the provider

7    or facility where the testing and/or examination was to take place, and determining the scope of

8    the testing and/or examination.

9        132.    For example, Plaintiff was instructed by Defendants to travel to a specific

10   medical facility and obtain a drug test. Plaintiff followed Defendants' instructions and

11   underwent the required drug test. Plaintiff spent approximately one (1) hour and 45 minutes

12   traveling to and from the clinic and undergoing the required drug test. However, Defendants did

13   not compensate Plaintiff for this time or reimburse her for her travel expenses to and from the

14   medical facility.

15       133.    Defendants did not compensate Plaintiff and other aggrieved employees for the

16   time they spent traveling to and from their drug tests and/or physical examinations, or for the

17   time they spent undergoing the testing and/or examinations, or reimburse them for the travel

18   expenses they incurred getting to and from the medical facilities. Defendants' policy and/or

19   practice of not paying for all costs Plaintiff and other aggrieved employees incurred obtaining

20   mandatory drug tests and/or physical examinations violates California Labor Code section

21   222.5. Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties

22   pursuant to Labor Code section 2699(a), (f)-(g).

23       134.    California's Healthy Workplaces, Healthy Families Act of 2014 was enacted to

24   provide employees who have worked in California for 30 or more days from the

25   commencement of employment with paid sick days, to be accrued at least one hour for every

26   30 hours worked. Employers must provide no less than 24 hours or three (3) days of paid sick

27   leave (or equivalent paid leave or paid time off) in each year of the employee's employment.

28   Codified at California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249,

CLASS ACTION COMPLAINT

section 246(i) provides that an employer must provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off that an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement or in a separate written statement provided on the designated pay date with the employee's wages. The penalties described in this article for a violation of this subdivision shall be in lieu of the penalties for a violation of Section 226.

135.    During the relevant time period, Defendants failed, on a company-wide basis, to provide Plaintiff and other aggrieved employees written notice on wage statements and/or other separate written statements that listed the requisite information set forth in Labor Code section 246(i). Defendants' ongoing and systematic failure to provide written notice of sick leave benefits to Plaintiff and other aggrieved employees violates California Labor Code section 246(i). Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 248.5 and/or 2699(a), (f)-(g).

136.    California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful." California Code of Regulations, Title 8, section 11090(5)(A) provides that "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." The "primary purpose of the reporting time regulation" is "to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer." *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556 (2012)

137.    Defendants violated California Labor Code section 1198 and California Code
of Regulations, Title 8, section 11090(5), because Defendants failed to pay other aggrieved
employees reporting time pay when they reported to work for their scheduled shift but were
put to work for less than half of the regular schedule.  Defendants had a company-wide
practice of sending employees home early from their shifts, including before they had worked
at least half of their regular shift, when there were lulls in the amount of rental car customers.

138.    For example, other aggrieved employees reported to Defendants for work, but
were sent home less than halfway into their shifts by Defendants' management and were not
paid reporting time pay.  Sometimes this occurred when other aggrieved employees had only
worked a few hours into an eight (8) or ten (10) hour shift.  Although other aggrieved
employees would report to work based on the schedule that Defendants provided to them,
Defendants would send them home before they had worked at least half of their scheduled
shifts and did not pay them reporting time pay.  Accordingly, other aggrieved employees were
not properly compensated with reporting time pay in violation of California Labor Code
section 1198.  Other aggrieved employees are therefore entitled to recover civil penalties
pursuant to Labor Code section 2699(a), (f)-(g).

139.    California's Wage Theft Prevention Act was enacted to ensure that employers
provide employees with basic information material to their employment relationship at the time
of hiring, and to ensure that employees are given written and timely notice of any changes to
basic information material to their employment.  Codified at California Labor Code section
2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must
provide written notice to employees containing basic and material payroll information,
including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour,
shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the
regular payday designated by the employer, and any allowances claims as part of the minimum
wage, including meal or lodging allowances.  Labor Code section 2810.5(a)(1)(A)-(C).

140.    Defendants failed to provide Plaintiff and other aggrieved employees written
notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).

1   Defendants' failure to provide Plaintiff and other aggrieved employees with written notice of

2   basic information regarding their employment with Defendants is in violation of Labor Code

3   section 2810.5. Plaintiff and other aggrieved employees are therefore entitled to recover civil

4   penalties pursuant to Labor Code section 2699(a), (f)-(g).

5                          **NINTH CAUSE OF ACTION**

6       **Violation of California Business & Professions Code §§ 17200, *et seq.*—Unlawful**

7                              **Business Practices**

8                          **(Against all Defendants)**

9       141.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each

10  and every allegation set forth above.

11      142.   Defendants are "persons" as defined by California Business & Professions

12  Code sections 17201, as they are corporations, firms, partnerships, joint stock companies,

13  and/or associations.

14      143.   Defendants' conduct, as alleged herein, has been, and continues to be, unfair,

15  unlawful and harmful to Plaintiff, class members, and to the general public. Plaintiff has

16  suffered injury in fact and has lost money as a result of Defendants' unlawful business

17  practices. Plaintiff seeks to enforce important rights affecting the public interest within the

18  meaning of Code of Civil Procedure section 1021.5.

19      144.   Defendants' activities, as alleged herein, are violations of California law, and

20  constitute unlawful business acts and practices in violation of California Business &

21  Professions Code sections 17200, *et seq.*

22      145.   A violation of California Business & Professions Code sections 17200, *et seq.*

23  may be predicated on the violation of any state or federal law. In the instant case, Defendants'

24  policies and practices have violated state law in at least the following respects:

25          (a)   Requiring non-exempt, hourly-paid employees, including Plaintiff and

26              class members, to work overtime without paying them proper

27              compensation in violation of California Labor Code sections 510 and

28              1198 and the applicable IWC Order and paying Plaintiff and class

members overtime at a lower rate than required by law by failing to properly calculate the regular rate of pay for purposes of overtime, as alleged herein;

(b) Failing to pay at least minimum wage to Plaintiff and class members in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 and the applicable IWC Order, as alleged herein;

(c) Failing to provide uninterrupted meal periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 1198, and the applicable IWC Order, as alleged herein;

(d) Failing to authorize and permit Plaintiff and class members to take uninterrupted rest periods in violation of California Labor Code sections 226.7, 1198, and the applicable IWC Order, as alleged herein;

(e) Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), 1198, and the applicable IWC Order, as alleged herein;

(f) Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204 and the applicable IWC Order, as set forth below;

(g) Requiring Plaintiff and class members to execute releases of claims as a condition to receiving their earned wages, in violation of California Labor Code section 206.5, as set forth below;

(h) Failing to pay Plaintiff and class members the costs of mandatory physical examinations and/or drug testing in violation of California Labor Code section 222.5, as set forth below;

(i) Failing to provide written notice of paid sick leave or paid time off available to Plaintiff and class members in violation of California Labor Code section 246(i), as set forth below;

CLASS ACTION COMPLAINT

(j)     Failing to pay reporting time pay in violation of California Labor Code section 1198 and the applicable Industrial Welfare Commission Order, as alleged herein;

(k)     Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein; and

(l)     Failing to provide written notice of information material to Plaintiff's and class members' employment with Defendants in violation of Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

146.    At all relevant times herein set forth, California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed. Labor Code section 204 further provides that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month.

147.    At all relevant times herein, California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, at all relevant times herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

148.    During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due to them within any time period specified by California Labor Code section 204 including, but not limited to, overtime wages, minimum wages, meal and rest period premium wages, and reporting time pay.

149.    California Labor Code section 206.5 prohibits employers from requiring

1  employees to execute releases of a claim or right "on account of wages due, or to become due,

2  or made as an advance on wages to be earned, unless payment of those wages has been made.

3  A release required or executed in violation of the provisions of this section shall be null and

4  void as between the employer and the employee."

5       150.   During the relevant time period, Defendants required Plaintiff and class

6  members to release their claims for meal and/or rest period violations as a condition to

7  receiving their paychecks.  For example, at the end of each work week, Defendants required

8  Plaintiff and class members to sign "Station Time Cards" stating, "[b]y signing below, I

9  certify and declare that . . . that I have taken all of the rest periods and duty-free meal periods

10 to which I was entitled during the covered period."  Defendants compelled Plaintiff and class

11 members to sign these false verifications when they, in fact, were not provided all meal and/or

12 rest periods during the work week.  Defendants' policy and practice of requiring Plaintiff and

13 class members to release their claims for meal and/or rest period violations as a condition to

14 receiving their wages is in violation of California Labor Code section 206.5.

15      151.   At all times herein set forth, California Labor Code section 222.5 requires

16 employers to pay for the costs an employee incurs for obtaining any required medical or

17 physical examination.

18      152.   During the relevant time period, Defendants implemented, on a company-wide

19 basis, an employer-imposed requirement that Plaintiff and class members undergo mandatory

20 drug tests and/or physical examinations, but required them to do so at their own expense.  As

21 stated, Defendants had a company-wide policy requiring that all employees, including

22 Plaintiff and class members, travel to a specified medical facility on their own time and use

23 their own means of transportation to undergo drug testing.  At all times, Defendants were in

24 control of scheduling the date and time for the testing, selecting the provider or facility where

25 the testing and/or examination was to take place, and determining the scope of the testing

26 and/or examination.

27      153.   For example, Plaintiff was instructed by Defendants to travel to a specific

28 medical facility and obtain a drug test.  Plaintiff followed Defendants' instructions and

1   underwent the required drug test. Plaintiff spent approximately one (1) hour and 45 minutes

2   traveling to and from the clinic and undergoing the required drug test. However, Defendants

3   did not compensate Plaintiff for this time or reimburse her for her travel expenses to and from

4   the medical facility.

5        154.  Defendants did not compensate Plaintiff and class members for the time they

6   spent traveling to and from their drug tests and/or physical examinations, or for the time they

7   spent undergoing the testing and/or examinations, or reimburse them for the travel expenses

8   they incurred getting to and from the medical facilities. Defendants' policy and/or practice of

9   not paying for all costs Plaintiff and class members incurred obtaining mandatory drug tests

10   and/or physical examinations violates California Labor Code section 222.5.

11        155.  California's Healthy Workplaces, Healthy Families Act of 2014 was enacted to

12   provide employees who have worked in California for 30 or more days from the

13   commencement of employment with paid sick days, to be accrued at least one hour for every

14   30 hours worked. Employers must provide no less than 24 hours or three (3) days of paid sick

15   leave (or equivalent paid leave or paid time off) in each year of the employee's employment.

16   Codified at California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249,

17   section 246(i) provides that an employer must provide an employee with written notice that

18   sets forth the amount of paid sick leave available, or paid time off that an employer provides

19   in lieu of sick leave, for use on either the employee's itemized wage statement or in a separate

20   written statement provided on the designated pay date with the employee's wages. The

21   penalties described in this article for a violation of this subdivision shall be in lieu of the

22   penalties for a violation of Section 226.

23        156.  During the relevant time period, Defendants failed, on a company-wide basis,

24   to provide Plaintiff and class members written notice on wage statements and/or other separate

25   written statements that listed the requisite information set forth in Labor Code section 246(i).

26   Defendants' ongoing and systematic failure to provide written notice of sick leave benefits to

27   Plaintiff and class members violates California Labor Code section 246(i).

28        157.  California's Wage Theft Prevention Act was enacted to ensure that employers

provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code section 2810.5(a)(1)(A)-(C).

158.   Defendants failed to provide Plaintiff and class members written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C). Defendants' failure to provide Plaintiff and class members with written notice of basic information regarding their employment with Defendants is in violation of Labor Code section 2810.5.

159.   As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

160.   Pursuant to California Business & Professions Code sections 17200 *et seq.*, Plaintiff and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

//

//

//

CLASS ACTION COMPLAINT

# TENTH CAUSE OF ACTION

**Violation of California Business & Professions Code §§ 17200, et seq.—Unfair Business**

**Practices**

**(Against all Defendants)**

161.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

162.    Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

163.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiff, class members, and to the general public. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair business practices. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

164.    Defendants' activities, namely Defendants' company-wide practice and/or policy of not paying Plaintiff and class members all meal and rest period premium wages due to them under Labor Code section 226.7, deprived Plaintiff and class members of the compensation guarantee and enhanced enforcement implemented by section 226.7. The statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and secondarily to shape employer conduct. *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015). The statutory benefits of section 226.7 were guaranteed to Plaintiff and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.* (Id.)

165.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice. In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest break laws and constitute

1    acts against the public policy behind these laws.

2        166.    Pursuant to California Business & Professions Code sections 17200 *et seq.*,

3    Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory

4    benefits implemented by section 226.7 withheld and retained by Defendants during a period

5    that commences four years prior to the filing of this complaint; a permanent injunction

6    requiring Defendants to pay all statutory benefits implemented by section 226.7 due to

7    Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil

8    Procedure section 1021.5 and other applicable laws; and an award of costs.

9                            **REQUEST FOR JURY TRIAL**

10        Plaintiff requests a trial by jury.

11                            **PRAYER FOR RELIEF**

12        Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against

13    Defendants, jointly and severally, as follows:

14        1.    For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in

15    excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff

16    reserves the right to amend her prayer for relief to seek a different amount.

17                            **Class Certification**

18        2.    That this case be certified as a class action;

19        3.    That Plaintiff be appointed as the representative of the Class and Subclass;

20        4.    That counsel for Plaintiff be appointed as class counsel.

21                        **As to the First Cause of Action**

22        5.    That the Court declare, adjudge, and decree that Defendants violated California

23    Labor Code sections 510 and 1198 and applicable IWC Wage Orders by willfully failing to pay

24    all overtime wages due to Plaintiff and class members;

25        6.    For general unpaid wages at overtime wage rates and such general and special

26    damages as may be appropriate;

27        7.    For pre-judgment interest on any unpaid overtime compensation commencing

28    from the date such amounts were due, or as otherwise provided by law;

8.      For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a); and

9.      For such other and further relief as the Court may deem equitable and appropriate.

### As to the Second Cause of Action

10.      That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 by willfully failing to pay minimum wages to Plaintiff and class members;

11.      For general unpaid wages and such general and special damages as may be appropriate;

12.      For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

13.      For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

14.      For liquidated damages pursuant to California Labor Code section 1194.2; and

15.      For such other and further relief as the Court may deem equitable and appropriate.

### As to the Third Cause of Action

16.      That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), and 1198 and applicable IWC Wage Order(s) by willfully failing to provide all meal periods to Plaintiff and class members;

17.      That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

18.      For all actual, consequential, and incidental losses and damages, according to proof;

19.      For premiums pursuant to California Labor Code section 226.7(b);

20.      For pre-judgment interest on any unpaid meal period premiums from the date

1  such amounts were due, or as otherwise provided by law;

2      21.     For attorneys' fees pursuant to California Code of Civil Procedure section

3  1021.5, or as otherwise provided by law; and

4      22.     For such other and further relief as the Court may deem equitable and

5  appropriate.

6                    **As to the Fourth Cause of Action**

7      23.     That the Court declare, adjudge and decree that Defendants violated California

8  Labor Code sections 226.7 and 1198 and applicable IWC Wage Orders by willfully failing to

9  authorize and permit Plaintiff and class members to take all rest periods;

10     24.     That the Court make an award to the Plaintiff and class members of one (1) hour

11 of pay at each employee's regular rate of pay for each workday that a rest period was not

12 authorized and permitted;

13     25.     For all actual, consequential, and incidental losses and damages, according to

14 proof;

15     26.     For premiums pursuant to California Labor Code section 226.7(b);

16     27.     For pre-judgment interest on any unpaid rest period premiums from the date

17 such amounts were due, or as otherwise provided by law;

18     28.     For attorneys' fees pursuant to California Code of Civil Procedure section

19 1021.5, or as otherwise provided by law; and

20     29.     For such other and further relief as the Court may deem equitable and

21 appropriate.

22                    **As to the Fifth Cause of Action**

23     30.     That the Court declare, adjudge and decree that Defendants violated the

24 recordkeeping provisions of California Labor Code section 226(a) and applicable IWC Wage

25 Orders as to Plaintiff and Subclass members, and willfully failed to provide accurate itemized

26 wage statements thereto;

27     31.     For all actual, consequential and incidental losses and damages, according to

28 proof;

32.    For injunctive relief pursuant to California Labor Code section 226(h);

33.    For statutory penalties pursuant to California Labor Code section 226(e);

34.    For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

35.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Sixth Cause of Action

36.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages, and meal and rest period premiums owed at the time of termination of the employment of Plaintiff and other terminated class members;

37.    For all actual, consequential and incidental losses and damages, according to proof;

38.    For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

39.    For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

40.    For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

41.    For such other and further relief as the Court may deem equitable and appropriate.

### As to the Seventh Cause of Action

42.    That the Court declare, adjudge and decree that Defendants violated California Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-related expenses and costs incurred by Plaintiff and class members;

43.    For unpaid business-related expenses and such general and special damages as may be appropriate;

44.    For pre-judgment interest on any unpaid business-related expenses from the

Page 48

1   date such amounts were due, or as otherwise provided by law;

2       45.    For all actual, consequential, and incidental losses and damages, according to

3   proof;

4       46.    For attorneys' fees and costs pursuant to California Labor Code

5   section 2802(c), or as otherwise provided by law; and

6       47.    For such other and further relief as the Court may deem equitable and

7   appropriate.

8               **As to the Eighth Cause of Action**

9       48.    That the Court declare, adjudge and decree that Defendants violated the

10   following California Labor Code provisions as to Plaintiff and/or other aggrieved employees:

11   510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and

12   1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512 and 1198 (by

13   failing to provide all meal periods); 226.7 and 1198 (by failing to authorize and permit all rest

14   periods); 226(a), 1174(d) and 1198 (by failing to provide accurate wage statements and maintain

15   accurate payroll records); 201, 202, 203 (by failing timely to pay all earned wages upon

16   termination); 204 (by failing timely to pay all earned wages during employment); 206.5 (by

17   requiring releases of claims as a condition to receiving paychecks); 222.5 (by failing to pay the

18   costs of mandatory drug testing and/or physical examinations); 246 (by failing to provide

19   written notice of paid sick leave or paid time off available); 1198 (by failing to provide

20   reporting time pay); 2802 (by failing to reimburse business expenses); and 2810.5 (by failing to

21   provide written notice of material terms of employment);

22       49.    For civil penalties pursuant to California Labor Code sections 210, 226.3, 248.5,

23   256, 558, 1174.5, 1197.1, and/or 2699(a), (f) and (g), for violations of California Labor Code

24   sections 201, 202, 203, 204, 206.5, 222.5, 226(a), 226.7, 246, 510, 512(a), 1174(d), 1182.12,

25   1194, 1197, 1197.1, 1198, 2802, and 2810.5;

26       50.    For attorneys' fees and costs pursuant to California Labor Code section

27   2699(g)(1), and any and all other relevant statutes, for Defendant's violations of California

28   Labor Code sections 201, 202, 203, 204, 206.5, 222.5, 226(a), 226.7, 246, 510, 512(a), 1174(d),

1   1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5;

2       51.    For pre-judgment and post-judgment interest as provided by law; and

3       52.    For such other and further relief as the Court may deem equitable and

4   appropriate.

5                      **As to the Ninth Cause of Action**

6       53.    That the Court declare, adjudge and decree that Defendants' conduct of failing

7   to provide Plaintiff and class members all overtime wages due to them, failing to provide

8   Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and

9   class members all meal periods, failing to authorize and permit Plaintiff and class members to

10  take all rest periods, failing to provide Plaintiff and class members accurate and complete

11  wage statements, failing to maintain accurate payroll records for Plaintiff and class members,

12  failing timely to pay Plaintiff and class members all earned wages during employment,

13  requiring Plaintiff and class members to release claims as a condition to receive paychecks,

14  failing to reimburse Plaintiff and class members for the costs of mandatory medical

15  examinations, failing to reimburse Plaintiff and class members for business-related expenses,

16  and failing to provide written notice of information material to employment, constitutes an

17  unlawful business practice in violation of California Business and Professions Code sections

18  17200, *et seq.*;

19      54.    For restitution of unpaid wages to Plaintiff and all class members and

20  prejudgment interest from the day such amounts were due and payable;

21      55.    For the appointment of a receiver to receive, manage and distribute any and all

22  funds disgorged from Defendants and determined to have been wrongfully acquired by

23  Defendants as a result of violations of California Business & Professions Code sections 17200

24  *et seq.*;

25      56.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

26  California Code of Civil Procedure section 1021.5; and

27      57.    For such other and further relief as the Court may deem equitable and

28  appropriate.

**As to the Tenth Cause of Action**

58.    That the Court declare, adjudge and decree that Defendants' conduct of denying Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes an unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

59.    For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiff and class members and prejudgment interest from the day such amounts were due and payable;

60.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200 *et seq.*;

61.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

62.    For pre-judgment and post-judgment interest as provided by law; and

63.    For such other and further relief as the Court may deem equitable and appropriate.

Dated:  April 29, 2019

Respectfully submitted,

Capstone Law APC

By: _Bevin Allen Pike_

Bevin Allen Pike
Orlando Villalba
Joseph Hakakian

Attorneys for Plaintiff Wendellyn Moore

CLASS ACTION COMPLAINT

# Exhibit 1



1875 Century Park East, Suite 1000
Los Angeles, California 90067
310.556.4811 Main | 310.943.0396 Fax

BROOKE WALDROP
310.712.8033 Direct
Brooke.Waldrop@capstonelawyers.com

February 22, 2019

<u>VIA ONLINE SUBMISSION</u>

California Labor & Workforce Development Agency
ATTN: PAGA Administrator
(https://dir.tfaforms.net/207)

Subject:      *Wendellyn Moore v. Hertz Local Edition Corp., et al.*

Dear PAGA Administrator:

This office represents Wendellyn Moore in connection with her claims under the California Labor Code. Ms. Moore was an employee of HERTZ LOCAL EDITION CORP., THE HERTZ CORPORATION, and/or HERTZ LOCAL EDITION TRANSPORTING, INC. For the purpose of this letter, Ms. Moore collectively refers to these entities as "HERTZ".

The employers may be contacted directly at the addresses below:

HERTZ LOCAL EDITION CORP.              THE HERTZ CORPORATION
8501 WILLIAMS ROAD                     8501 WILLIAMS ROAD
ESTERO FL 33928                        ESTERO FL 33928

HERTZ LOCAL EDITION
TRANSPORTING, INC.
8501 WILLIAMS ROAD
ESTERO FL 33928

Ms. Moore intends to seek civil penalties, attorney's fees, costs, and other available relief for violations of the California Labor Code, which are recoverable under sections 2698, *et seq.*, the Labor Code Private Attorneys General Act of 2004 ("PAGA"). Ms. Moore seeks relief on behalf of herself, the State of California, and other persons who were employed by HERTZ in California as a non-exempt, hourly-paid employee and who received at least one wage statement ("aggrieved employees"). This letter is sent in compliance with the notice and reporting requirements of California Labor Code section 2699.3.

HERTZ employed Ms. Moore as a non-exempt, hourly-paid employee from approximately November 8, 2017 to December 5, 2018. Ms. Moore worked as a Transportation Specialist at HERTZ's vehicle rental location in San Diego, California at 3202 North Harbor Drive. During her employment, Ms. Moore typically worked eight (8) to eleven (11) hours or more per day, five (5)

days per week, and forty (40) to fifty-five (55) hours per week. At the time Ms. Moore's employment with HERTZ ended, she earned approximately $14.00 per hour. Her job duties included, without limitation, operating the cash register, cleaning rental cars, inspecting rental cars for damage, and processing car rental reservations for customers and ridesharing-company Lyft.

HERTZ committed one or more of the following Labor Code violations against Ms. Moore, the facts and theories of which follow, making her an "aggrieved employee" pursuant to California Labor Code section 2699(c): [1]

### HERTZ's Company-Wide and Uniform Payroll and HR Practices

THE HERTZ CORPORATION is a Delaware corporation that operates and franchises vehicle rental locations throughout the United States with approximately 350 vehicle rental locations in California. HERTZ LOCAL EDITION CORP. and HERTZ LOCAL EDITION TRANSPORTING, INC. are Delaware corporations headquartered in Estero, Florida. On information and belief, HERTZ's company headquarters are located at 8501 Williams Road, Estero, Florida 33928. Upon information and belief, HERTZ maintains a centralized Human Resources (HR) department at their headquarters in Estero, Florida, for all non-exempt, hourly-paid employees working for HERTZ in California, including Ms. Moore and other aggrieved employees. At all relevant times, HERTZ issued and maintained uniform, standardized practices and procedures for all non-exempt, hourly-paid employees in California, including Ms. Moore and other aggrieved employees, regardless of their location or position. The policies and procedures presently believed to cause violations of the California Labor Code are identified herein.

On information and belief, HERTZ maintains a centralized Payroll department at their corporate headquarters, which processes payroll for all its non-exempt, hourly-paid employees in California, including Ms. Moore and other aggrieved employees. Upon information and belief, HERTZ issues the same uniform and formatted wage statements to all non-exempt, hourly-paid employees in California, irrespective of their location or position. HERTZ processes payroll for non-exempt, hourly-paid employees in the same manner throughout California, and the same methods and formulas were used to calculate wages due to Ms. Moore and other aggrieved employees in California. HERTZ issued uniform, standardized wage statements to Ms. Moore and other aggrieved employees during the relevant time period.

### Violation of California Labor Code §§ 510 and 1198 – Unpaid Overtime

California Labor Code sections 510 and 1198 and the applicable Industrial Welfare Commission ("IWC") Wage Order require employers to pay employees working more than eight (8) hours in a day or more than forty (40) hours in a workweek at the rate of time-and-one-half (1 ½) times the regular rate of pay for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek. The applicable IWC Wage Order further provides that employers are required to pay

---

[1] These facts, theories, and claims are based on Ms. Moore's experience and counsel's review of those records currently available relating to Ms. Moore's employment. Discovery conducted in litigation of wage and hour claims such as these often reveals additional claims that the aggrieved employee was not initially aware of (because the aggrieved employee was not aware of the law's requirements, the employer misinformed its employee of the law's requirements, or because the employer effectively hid the violations). Thus, Ms. Moore reserves the right to supplement this letter with additional facts, theories, and claims if she becomes aware of them subsequent to the submission of this letter.

employees working more than twelve (12) hours in a day overtime compensation at a rate of two (2) times their regular rate of pay. An employee's regular rate of pay includes all remuneration for employment paid to, or on behalf of, the employee, including non-discretionary bonuses and incentive pay.

HERTZ willfully failed to pay all overtime wages owed to Ms. Moore and other aggrieved employees. During the relevant time period, Ms. Moore and other aggrieved employees were not paid overtime premiums for all of the hours they worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week, because all hours that they worked were not recorded.

First, during the relevant period, HERTZ had, and continues to have, a company-wide policy and/or practice of understaffing its vehicle rental locations while discouraging accrual of overtime hours by employees. HERTZ's company-wide understaffing of its locations led to a failure to provide Ms. Moore and other aggrieved employees with adequate meal period coverage. As a result, Ms. Moore and other aggrieved employees were not always afforded uninterrupted 30-minute meal periods during shifts when they were entitled to receive a meal period. Due to HERTZ's understaffing, Ms. Moore and other aggrieved employees worked through meal periods or had their meal periods interrupted by HERTZ's management or customers, because there were not enough employees on duty to handle the workload. For example, Ms. Moore was required to continue to perform her duties, such as processing customers' rental reservations and handling Lyft reservations, during unpaid meal periods because the rental location was shorthanded and no one else was available to assist customers.

Further, because HERTZ frowned upon employees accruing meal period penalties, Ms. Moore and other aggrieved employees were instructed by HERTZ's supervisors to clock in and out for their meal periods at designated times, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by HERTZ. And, on other occasions, when other aggrieved employees did not manage to clock out at their designated meal period start times, they were subject to HERTZ's supervisors falsifying their time records and deducting time for meal periods that were not taken. HERTZ's supervisors would adjust employee time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, to reduce the meal penalties that would need to be paid by HERTZ. Consequently, Ms. Moore and other aggrieved employees performed work during meal periods for which they were not paid.

Second, other aggrieved employees were also required to perform tasks off-the-clock after their scheduled shifts. For example, other aggrieved employees were required to answer customers' questions and process rental agreements after clocking out.

Third, HERTZ had a company-wide policy and/or practice of requiring Ms. Moore and other aggrieved employees to communicate with HERTZ's supervisors while off-the-clock using their personal cellular phones. For example, Ms. Moore spent approximately 5 to 10 minutes each week reviewing and responding to text messages and calls from HERTZ supervisors, while off-the-clock.

HERTZ knew or should have known that as a result of these company-wide practices and/or policies, Ms. Moore and other aggrieved employees were working before and after their shifts and/or during their meal periods, and were suffered or permitted to perform work for which they were not paid. HERTZ also knew, or should have known, that it did not compensate Ms. Moore and other aggrieved employees for this off-the-clock work and unrecorded overtime hours. Because Ms. Moore and other

aggrieved employees worked shifts of eight (8) hours a day or more or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Ms. Moore and other aggrieved employees were not paid overtime wages for all of the overtime hours they worked. HERTZ's failure to pay Ms. Moore and other aggrieved employees the balance of overtime compensation, as required by California law, violates the provisions of California Labor Code sections 510 and 1198.

Furthermore, HERTZ did not pay Ms. Moore and other aggrieved employees the correct overtime rate for the recorded overtime hours that they generated. In addition to an hourly wage, HERTZ paid Ms. Moore and other aggrieved employees incentive pay, nondiscretionary bonuses, and/or other forms of remuneration. However, in violation of the California Labor Code, HERTZ failed to incorporate all remunerations, including incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, into the calculation of the regular rate of pay for purposes of calculating the overtime wage rate. Therefore, during times when Ms. Moore and other aggrieved employees worked overtime and received these other forms of pay, HERTZ failed to pay all overtime wages by paying a lower overtime rate than required.

Specifically, Ms. Moore and other aggrieved employees received incentive pay from HERTZ based on their location's sales and customer service performance in the region. This incentive pay appeared on Ms. Moore's and other aggrieved employees' wage statements as "Bonus HLE" and "Inc HLE." In the same pay periods in which nondiscretionary bonuses and/or incentive pay were earned, Ms. Moore and other aggrieved employees also worked overtime hours for which they were paid overtime wages. However, HERTZ failed to incorporate these other earned forms of pay into Ms. Moore's other aggrieved employees' regular rate of pay and, as a result, paid them at an incorrect and lower rate of pay for overtime hours worked. Specifically, HERTZ paid them at 1.5 times their *hourly* rate of pay instead of at 1.5 times their *regular* rate of pay. HERTZ's failure to properly calculate the overtime rate of pay based on all remuneration paid has resulted in an underpayment of overtime wages to Ms. Moore and other aggrieved employees.

Ms. Moore and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558, 1194, and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 – Unpaid Minimum Wages

California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 require employers to pay employees the minimum wage fixed by the IWC. The payment of a lesser wage than the minimum so fixed is unlawful. Compensable work time is defined by the applicable Wage Order as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

As set forth above, due to HERTZ's company-wide understaffing, along with its practice of requiring employees to avoid accruing overtime hours, and lack of break coverage, Ms. Moore and other aggrieved employees were forced to forego meal periods, have their meal periods interrupted, and were otherwise not relieved of all duties during meal periods. As a further result of these policies and/or practices, other aggrieved employees were required to work off-the-clock after clocking out at the end of their scheduled shifts to perform assigned tasks, such as providing customer service. In addition, Ms. Moore and other aggrieved employees were required to perform work off-the-clock

before or after their shifts by responding to work-related calls and text messages from HERTZ's management.

Moreover, HERTZ maintained and implemented a company-wide policy of requiring all employees to travel to a medical clinic on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations. However, HERTZ did not compensate Ms. Moore and other aggrieved employees for the time they spent traveling to and from the testing facilities or for the time they spent undergoing testing. At all times, HERTZ was in control of scheduling the date and time for the testing, selecting the provider or facility where the testing was to take place, and determining the scope of the exam. Ms. Moore followed HERTZ's instructions and traveled to a medical facility designated by HERTZ. Ms. Moore spent approximately one (1) hour and 45 minutes traveling to and from the medical facility and undergoing mandatory drug testing. HERTZ did not compensate Ms. Moore for this time and did not compensate other aggrieved employees for the time they spent traveling to and undergoing the mandatory drug testing and/or physical examinations.

HERTZ did not pay minimum wages for meal periods and other off-the-clock hours that Ms. Moore and other aggrieved employees worked through that qualified for overtime premium payment. To the extent that these off-the-clock hours did not qualify for overtime premium payment, HERTZ did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198. Accordingly, HERTZ regularly failed to pay at least minimum wages to Ms. Moore and other aggrieved employees for all of the hours they worked in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

Ms. Moore and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 1197.1 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226.7, 512(a), and 1198 – Failure to Provide Meal Periods

California Labor Code sections 226.7, 512(a) and 1198 and the applicable IWC Wage Order require employers to provide meal and rest breaks and to pay an employee one (1) additional hour of pay at the employee's regular rate for each work day that a meal or rest period is not provided. Pursuant to Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order, an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee. Under California law, first meal periods must start after no more than five hours. *Brinker Rest. Corp. v. Superior Court,* 53 Cal. 4th 1004, 1041-1042 (Cal. 2012). Labor Code sections 226.7 and 512(a) and the applicable IWC Wage Order also require employers to provide a second meal break of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

First, as stated, HERTZ had, and continues to have, a uniform policy and/or practice of understaffing along with discouraging employees from accruing overtime hours, which resulted in a lack of meal period coverage and prevented Ms. Moore and other aggrieved employees from taking all timely, uninterrupted meal periods to which they were entitled. HERTZ's company-wide understaffing of its

vehicle rental locations led to a failure to provide Ms. Moore and other aggrieved employees with adequate meal period coverage. As a result, Ms. Moore and other aggrieved employees worked through meal periods, because there were not enough employees on duty to handle the workload and customer demand. For example, Ms. Moore missed her meal periods four (4) times per week due to a lack of coverage resulting from having too few employees on duty to handle the workload.

Second, because HERTZ frowned upon employees accruing meal period penalties, HERTZ management would adjust employee time records to reflect compliant meal periods, regardless of whether they had received a compliant meal period or not, in order to strictly limit meal penalties that would need to be paid by HERTZ. Consequently, Ms. Moore and other aggrieved employees performed work during meal periods for which they were not paid.

Moreover, HERTZ did not provide Ms. Moore and other aggrieved employees with second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day. Ms. Moore worked ten (10) or more hours per day regularly without being provided a second 30-minute meal period. Ms. Moore and other aggrieved employees did not sign valid meal break waivers on days that they were entitled to meal periods and were not relieved of all duties.

HERTZ knew or should have known that as a result of its systemic understaffing, strict policy of limiting meal period penalties, and willful falsification of meal period records, that Ms. Moore and other aggrieved employees were not relieved of all duties to take timely, uninterrupted meal periods. HERTZ did not pay Ms. Moore and other aggrieved employees meal period premium wages when they were missed, late, short, and/or interrupted.

Because of these practices and/or policies, Ms. Moore and other aggrieved employees have not received premium pay for all missed, late and interrupted meal periods. Alternatively, to the extent that HERTZ did pay meal period premium wages to Ms. Moore and other aggrieved employees, it did so at the incorrect rates. Because HERTZ did not properly calculate Ms. Moore's and other aggrieved employees' regular rates of pay by including all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, any premiums paid for meal period violations were also paid at an incorrect rate and resulted in an underpayment of meal period premium wages.

Accordingly, HERTZ failed to provide all meal periods in violation of California Labor Code sections 226.7, 512(a), and 1198. Ms. Moore and other aggrieved employees are entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226.7 and 1198 – Failure to Authorize and Permit Rest Periods

California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC. The applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3½) hours.

To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call. A rest period, in short, must be a period of rest." *Augustus, et al. v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269-270 (2016).

During the relevant period, HERTZ maintained and implemented a company-wide rest period policy prohibiting Ms. Moore and other aggrieved employees from leaving the premises during rest periods. Because Ms. Moore and other aggrieved employees were restricted from leaving the premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes. Thus, HERTZ effectively maintained control over Ms. Moore and other aggrieved employees during rest periods. As a result, Ms. Moore and other aggrieved employees would work shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without being permitted and authorized to take all ten (10) minute rest periods to which they were entitled. Throughout her employment, Ms. Moore was never authorized or permitted to take a full and complete 10-minute rest period.

Additionally, HERTZ's company-wide systemic understaffing prevented Ms. Moore and other aggrieved employees from being relieved of all duty to take compliant rest periods. HERTZ also failed to schedule rest periods, which, coupled with HERTZ's failure to provide adequate break coverage, further led to Ms. Moore and other aggrieved employees not being authorized and permitted to take rest periods. For example, when her vehicle rental location was busy with high customer demand, Ms. Moore missed her rest periods. In fact, Ms. Moore always worked straight through her shifts without taking any ten (10) minute rest periods.

HERTZ also has engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized or permitted. Because of this practice and/or policy, Ms. Moore and other aggrieved employees have not received premium pay for all missed rest periods. Alternatively, to the extent that HERTZ did pay rest period premium wages to Ms. Moore and other aggrieved employees, it did so at the incorrect rates. Because HERTZ did not properly calculate Ms. Moore's and other aggrieved employees' regular rates of pay by including all forms of compensation, such as incentive pay, nondiscretionary bonuses, and/or other forms of remuneration, any premiums paid for rest period violations were also paid at an incorrect rate and resulted in an underpayment of rest period premium wages.

Accordingly, HERTZ failed to authorize and permit all rest periods in violation of California Labor Code sections 226.7 and 1198. Ms. Moore and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 558 and/or 2699(a), (f)-(g).

### Violation of California Labor Code §§ 226(a), 1174(d), and 1198 – Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records

California Labor Code section 226(a) requires employers to make, keep and provide true, accurate, and complete employment records. HERTZ has not provided Ms. Moore and other aggrieved employees with properly itemized wage statements. Labor Code section 226(e) provides that if an employer fails to comply with providing an employee with properly itemized wages statements as set forth in 226(a), then the employee is entitled to recover the greater of all actual damages or $50.00 for the initial pay period in which a violation occurs and $100 per employee for each violation in an subsequent pay period, not to exceed $4,000. Further, Labor Code section 226.3 provides that any

employer who violates section 226(a) shall be subject to a civil penalty in the amount of $250 per
employee per violation in an initial citation and $1,000 per employee for each violation in a
subsequent citation, for which the employer fails to provide the employee a wage statement or fails to
keep the required records pursuant to Section 226(a).

During the relevant time period, HERTZ has knowingly and intentionally provided Ms. Moore and
other aggrieved employees with uniform, incomplete, and inaccurate wage statements. For example,
HERTZ issued uniform wage statements to Ms. Moore and other aggrieved employees that fail to
correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly
rates in effect during the pay period, including overtime rates of pay, and the corresponding number
of hours worked at each hourly rate. Specifically, HERTZ violated sections 226(a)(1), 226(a)(2),
226(a)(5), and 226(a)(9). Because HERTZ deducted time worked from Ms. Moore's and other
aggrieved employees' wage statements and employment records for meal periods they did not
actually receive, the result of which was an unlawful deduction of wages earned and meal period
premiums that should have been paid. Thus, HERTZ did not furnish wage statements to Ms. Moore
and other aggrieved employees containing the correct amount of gross wages earned (Labor Code §
226(a)(1)), accurate totals of the hours worked (Labor Code § 226(a)(2)), correct amount of net
wages earned (Labor Code § 226(a)(5)), or accurate number of hours worked at each hourly rate
(Labor Code § 226(a)(9).

In addition, HERTZ did not calculate Ms. Moore's and other aggrieved employees' regular rate of
pay correctly for purposes of paying overtime, HERTZ did not list the correct amount of gross wages
earned by Ms. Moore and other aggrieved employees in compliance with section 226(a)(1). For the
same reason, HERTZ failed to list the correct amount of net wages earned by Ms. Moore and other
aggrieved employees in violation of section 226(a)(5). HERTZ also failed to correctly list all
applicable hourly rates in effect during the pay period, namely, correct overtime rates of pay and
correct rates of pay for premium wages, in violation of section 226(a)(9).

The wage statement deficiencies also include, among other things, failing to list the number of piece-
rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to
list all deductions; failing to list the name and address of the legal entity that is the employer; failing
to list the name of the employee and only the last four digits of his or her social security number or
an employee identification number other than a social security number; failing to list the inclusive
dates of the period for which aggrieved employees were paid; and/or failing to state all hours worked
as a result of not recording or stating the hours they worked off-the-clock.

California Labor Code section 1174(d) provides that "[e]very person employing labor in this state
shall … [k]eep a record showing the names and addresses of all employees employed and the ages of
all minors" and "[keep, at a central location in the state or at the plants or establishments at which
employees are employed, payroll records showing the hours worked daily by and the wages paid to,
and the number of piece-rate units earned by and any applicable piece rate paid to, employees
employed at the respective plants or establishments…" Labor Code section 1174.5 provides that
employers are subject to a $500 civil penalty if they fail to maintain accurate and complete records as
required by section 1174(d). During the relevant time period, and in violation of Labor Code section
1174(d), HERTZ willfully failed to maintain accurate payroll records for Ms. Moore and other
aggrieved employees showing the daily hours they worked and the wages paid thereto as a result of
failing to record the off-the-clock hours that they worked.

California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Orders. Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period. During the relevant time period, HERTZ failed, on a company-wide basis, to keep accurate records of meal period start and stop times for Ms. Moore and other aggrieved employees, in violation of section 1198. As stated, HERTZ engaged in a company-wide practice and/or policy of falsifying Ms. Moore's and other aggrieved employees' time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken, and thereby failed to keep accurate records of meal start and end times for Ms. Moore and other aggrieved employees. Furthermore, in light of HERTZ's failure to provide Ms. Moore and other aggrieved employees with second 30-minute meal periods to which they were entitled, HERTZ kept no records of meal start and end times for second meal periods.

Because HERTZ failed to provide the accurate number of total hours worked on wage statements, Ms. Moore and other aggrieved employees have been prevented from verifying, solely from information on the wage statements themselves, that they were paid correctly and in full. Instead, Ms. Moore and other aggrieved employees have had to look to sources outside of the wage statements themselves and reconstruct time records to determine whether in fact they were paid correctly and the extent of underpayment, thereby causing them injury.

Ms. Moore and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon pursuant to Labor Code sections 226(e), 226.3, 1174.5, and/or 2699(a), (f)-(g).

### Violation of California Labor Code § 204 – Failure to Timely Pay Wages During Employment

California Labor Code section 204 requires that all wages earned by any person in any employment between the 1st and the 15th days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 16th and the 26th day of the month during which the labor was performed, and that all wages earned by any person in any employment between the 16th and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the 1st and the 10th day of the following month. California Labor Code section 204 also requires that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. Alternatively, California Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

During the relevant time period, HERTZ failed to pay Ms. Moore and other aggrieved employees all wages due to them, including, but not limited to, overtime wages, minimum wages, meal and rest period premium wages, and reporting time pay, within any time period specified by California Labor Code section 204.

Ms. Moore and aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 210 and/or 2699(a), (f)-(g).

**Violation of California Labor Code §§ 201, 202 and 203 – Failure to Timely Pay Final Wages Upon Termination**

California Labor Code sections 201, 202 and 203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

HERTZ has a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in Labor Code sections 201 and 202. For example, Ms. Moore resigned from her employment with HERTZ on December 5, 2018, but did not receive her final wages within seventy-two (72) hours. Instead, HERTZ tendered Ms. Moore's final wages to her over one (1) week later on December 13, 2018. Thus, HERTZ failed to pay Ms. Moore her final wages within seventy-two (72) hours, in violation of Labor Code section 202.

In addition, HERTZ willfully failed to pay Ms. Moore and other aggrieved employees who are no longer employed by HERTZ all their earned wages, including, but not limited to, overtime wages, minimum wages, meal and rest period premium wages, and reporting time pay, either at the time of discharge, or within seventy-two (72) hours of their leaving HERTZ's employ in violation of California Labor Code sections 201, 202, and 203.

Ms. Moore and other aggrieved employees are entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 256 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 206.5 – Release of Claims for Wages Due**

California Labor Code section 206.5 prohibits employers from requiring employees to execute releases of a claim or right "on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee."

During the relevant time period, HERTZ required Ms. Moore and other aggrieved employees to release their claims for meal and/or rest period violations as a condition to receiving their paychecks. For example, at the end of each work week, HERTZ required Ms. Moore and other aggrieved employees to sign "Station Time Cards" stating, "[b]y signing below, I certify and declare that . . . that I have taken all of the rest periods and duty-free meal periods to which I was entitled during the covered period." HERTZ compelled Ms. Moore and other aggrieved employees to sign these false verifications when they, in fact, were not provided all meal and/or rest periods during the work week. HERTZ's policy and practice of requiring Ms. Moore and other aggrieved employees to release their claims for meal and/or rest period violations as a condition to receiving their wages is in violation of California Labor Code section 206.5.

Ms. Moore and other aggrieved employees are therefore entitled to penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code § 222.5 – Failure to Pay for Costs of Mandatory Physical Exams and/or Drug Testing**

At all times herein set forth, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

During the relevant time period, HERTZ implemented, on a company-wide basis, an employer-imposed requirement that Ms. Moore and other aggrieved employees undergo mandatory drug tests and/or physical examinations, but required them to do so at their own expense. As stated, HERTZ had a company-wide policy requiring that all employees, including Ms. Moore and other aggrieved employees, travel to a specified medical clinic on their own time and use their own means of transportation to undergo drug testing. At all times, HERTZ was in control of scheduling the date and time for the drug testing, selecting the provider/facility where the drug testing was to take place, and determining the scope of the drug test and/or physical examination.

For example, Ms. Moore was instructed by HERTZ to travel to a specific medical clinic and obtain a drug test. Ms. Moore followed HERTZ's instructions and underwent the required drug test. Ms. Moore spent approximately one (1) hour and 45 minutes traveling to and from the clinic and undergoing the required drug test. However, HERTZ did not compensate Ms. Moore for this time or reimburse her for her travel expenses to and from the clinic.

HERTZ did not compensate Ms. Moore and other aggrieved employees for the time they spent traveling to and from their drug tests and/or physical examinations, or for the time they spent undergoing the testing and/or examinations, or reimburse them for the travel expenses they incurred getting to and from the medical clinics. HERTZ's policy and/or practice of not paying for all costs Ms. Moore and other aggrieved employees incurred obtaining mandatory drug tests and/or physical examinations violates California Labor Code section 222.5.

Ms. Moore and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code § 227.3 - Failure to Pay All Vested Vacation Time and Paid Time Off upon Termination**

California Labor Code section 227.3 provides that if an employer terminates an employee, all vested vacation shall be paid to the employee at the employee's final rate of pay. Vacation time vests on a pro-rata basis and, upon termination, an employee is entitled to a pro rata share of vested vacation pay. An employer may not require an employee to forfeit earned but unused vacation pay.

HERTZ had a company-wide policy and practice of failing to pay Ms. Moore and other aggrieved employees vested vacation wages that were owed to them at the end of their employment, in violation of California Labor Code section 227.3. In addition, HERTZ had a company-wide forfeiture policy in place that divested Ms. Moore and other aggrieved employees of any unused vacation benefits if not used within the year of accrual. HERTZ's failure to pay Ms. Moore and other aggrieved employees all vested vacation wages at the end of their employment has caused a forfeiture of vested vacation wages in violation of California Labor Code section 227.3.

Ms. Moore and other aggrieved employees are therefore entitled to recover civil penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 225.5 and/or 2699(a), (f)-(g).

**Violation of California Labor Code § 246 - Failure to Provide Written Notice of Paid Sick Leave Benefits**

California's Healthy Workplaces, Healthy Families Act of 2014 was enacted to provide employees who have worked in California for 30 or more days from the commencement of employment with paid sick days, to be accrued at least one hour for every 30 hours worked. Employers must provide no less than 24 hours or three (3) days of paid sick leave (or equivalent paid leave or paid time off) in each year of the employee's employment. Codified at California Labor Code sections 245.5, 246, 246.5, 247, 247.5, 248.5, and 249, section 246(i) provides that an employer must provide an employee with written notice that sets forth the amount of paid sick leave available, or paid time off that an employer provides in lieu of sick leave, for use on either the employee's itemized wage statement or in a separate written statement provided on the designated pay date with the employee's wages. The penalties described in this article for a violation of this subdivision shall be in lieu of the penalties for a violation of Section 226.

During the relevant time period, HERTZ failed, on a company-wide basis, to provide Ms. Moore and other aggrieved employees written notice on wage statements and/or other separate written statements that listed the requisite information set forth in Labor Code section 246(i). HERTZ's ongoing and systematic failure to provide written notice of sick leave benefits to Ms. Moore and other aggrieved employees violates California Labor Code section 246(i).

Ms. Moore and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code sections 248.5 and/or 2699(f)-(g).

**Violation of California Labor Code § 1198 and California Code of Regulations Title 8, Section 11090 Subdivision 5(A) – Failure to Pay Reporting Time Pay**

California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC wage order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees. The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

California Code of Regulations, Title 8, section 11090(5)(A) provides that "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." The "primary purpose of the reporting time regulation" is "to guarantee at least partial compensation for employees who report to work expecting to work a specified number of hours, and who are deprived of that amount because of inadequate scheduling or lack of proper notice by the employer." *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556 (2012)

HERTZ violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11090(5), because HERTZ failed to pay other aggrieved employees reporting time pay when they reported to work for their scheduled shift but were put to work for less than half of the regular schedule. HERTZ had a company-wide practice of sending employees home early from their shifts,

including before they had worked at least half of their regular shift, when there were lulls in the
amount of rental car customers.

For example, other aggrieved employees reported to HERTZ for work, but were sent home less than
halfway into their shifts by HERTZ's management and were not paid reporting time pay. Sometimes
this occurred when other aggrieved employees had only worked a few hours into an 8 or 10-hour
shift. Although other aggrieved employees would report to work based on the schedule that HERTZ
provided to them, HERTZ would send them home before they had worked at least half of their
scheduled shifts and did not pay them reporting time pay. Accordingly, other aggrieved employees
were not properly compensated with reporting time pay in violation of California Labor Code section
1198.

Other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and
interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

**Violation of California Labor Code § 2802 – Unreimbursed Business Expenses**

California Labor Code section 2802 requires employers to pay for all necessary expenditures and
losses incurred by the employee in the performance of his or her job. The purpose of Labor Code
section 2802 is to prevent employers from passing off their cost of doing business and operating
expenses on to their employees. *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137,
1144 (2014). The applicable wage order, IWC Wage Order 9-2001, provides that: "[w]hen tools or
equipment are required by the employer or are necessary to the performance of a job, such tools and
equipment shall be provided and maintained by the employer, except that an employee whose wages
are at least two (2) times the minimum wage provided herein may be required to provide and maintain
hand tools and equipment customarily required by the trade or craft."

First, as mentioned, HERTZ had a company-wide policy and/or practice of requiring Ms. Moore and
other aggrieved employees to travel in their own personal vehicles to medical clinics to undergo
mandatory drug testing and/or physical examinations, but did not reimburse them for their travel
expenses. For example, as described above, Ms. Moore followed HERTZ's instructions, traveled for
approximately 30 miles roundtrip, and underwent the drug test. Although HERTZ required Ms.
Moore and other aggrieved employees to undergo the testing, HERTZ failed to reimburse them for
these expenses.

Second, during the relevant time period, HERTZ, on a company-wide basis, required that Ms. Moore
and other aggrieved employees use their own personal vehicles to attend mandatory training and/or
conferences and carry out their job duties, but failed to reimburse them for the cost of their work-
related vehicle and travel expenses. For example, in July 2018, Ms. Moore drove 14 miles roundtrip
to attend a mandatory training at the HERTZ vehicle rental location in National City, California, but
was not reimbursed for her mileage to and from the training. Although HERTZ required Ms. Moore
and other aggrieved employees to utilize their own vehicles and incur associated costs to attend
mandatory training and/or conferences, HERTZ failed to reimburse them for these necessary
expenses.

Third, HERTZ, on a company-wide basis, required that Ms. Moore and other aggrieved employees
use their own personal cellular phones and/or cellular phone data to carry out their job duties, but
failed to reimburse them for the costs of their work-related cellular phone expenses. For example,
Ms. Moore frequently used her personal cellular phone to discuss work-related issues with HERTZ

supervisors on a daily basis, as required. During her employment, HERTZ supervisors routinely texted messages to Ms. Moore both before and after her shifts regarding work items, tasks completed, and tasks to perform. Although HERTZ required Ms. Moore to regularly utilize her personal cellular phone to carry out work-related responsibilities, HERTZ failed to reimburse her for this cost.

HERTZ could have provided Ms. Moore and other aggrieved employees with the actual tools for use on the job, including company phones and company vehicles, to be used for fulfilling work-related tasks, or reimbursed employees for their actual cellular phone usage, travel expenses, and mileage. Instead, HERTZ passed these operating costs off onto Ms. Moore and other aggrieved employees. At all relevant times, Ms. Moore did not earn at least two (2) times the minimum wage. Thus, HERTZ had, and continues to have, a company-wide policy and/or practice of not reimbursing employees for expenses necessarily incurred.

HERTZ's policy and/or practice of passing its operating costs on to Ms. Moore and other aggrieved employees by requiring that they use their own cellular phones and personal vehicles for work purposes and failing to reimburse all expenses, violates California Labor Code section 2802. Ms. Moore and other aggrieved employees are entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### Violation of California Labor Code § 2810.5(a)(1)(A)-(C) – Failure to Provide Notice of Material Terms of Employment

California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment. Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees of the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances. Effective January 1, 2015, an employer's written notice pursuant to section 2810.5 must also include a statement that the employee may accrue and use sick leave; has a right to request and use accrued paid sick leave; may not be terminated or retaliated against for using or requesting the use of accrued paid sick leave; and has the right to file a complaint against an employer who retaliates.

HERTZ failed to provide Ms. Moore and other aggrieved employees written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C). HERTZ's failure to provide Ms. Moore and other aggrieved employees with written notice of basic information regarding their employment with HERTZ is in violation of Labor Code section 2810.5.

Ms. Moore and other aggrieved employees are therefore entitled to recover penalties, attorney's fees, costs, and interest thereon, pursuant to Labor Code section 2699(a), (f)-(g).

### California Labor Code § 558(a)

California Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil

penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages." Labor Code section 558(c) provides that "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law." HERTZ, at all relevant times, was an employer or person acting on behalf of an employer(s) who violated Ms. Moore's and other aggrieved employees' rights by violating various sections of the California Labor Code.

Accordingly, Ms. Moore seeks the remedies set forth in Labor Code section 558 for herself, the State of California, and all other aggrieved employees. Specifically, pursuant to PAGA, and in particular California Labor Code sections 2699(a), 2699.3(a) and 2699.3(c), 2699.5, and 558, Ms. Moore, acting in the public interest as a private attorney general, seeks assessment and collection of civil penalties for herself, all other aggrieved employees, and the State of California against HERTZ for violations of California Labor Code sections 201, 202, 203, 204, 206.5, 222.5, 226(a), 226.7, 227.3, 246, 510, 512(a), 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2802, and 2810.5.

Therefore, on behalf of all aggrieved employees, Ms. Moore seeks all applicable penalties related to these violations of the California Labor Code pursuant to PAGA.

Thank you for your attention to this matter. If you have any questions, please contact me at the phone number or address below:

> Brooke Waldrop
> Capstone Law APC
> 1875 Century Park East, Suite 1000
> Los Angeles, CA 90067
> (310) 712-8033

Best Regards,

Brooke Waldrop

Copy: HERTZ LOCAL EDITION CORP. (via U.S. Certified Mail); THE HERTZ CORPORATION (via U.S. Certified Mail); HERTZ LOCAL EDITION TRANSPORTING, INC (via U.S. Certified Mail)

ne
W APC
Park East, Ste 1000
A 90067

7010 2780 0003 1943 8821

UNITED STATES POSTAGE
PITNEY BOWES
$007.93⁹
02 1P
0000666553
MAILED FROM ZIP CODE 90067



HERTZ LOCAL EDITION CORP.
8501 WILLIAMS ROAD
ESTERO FL 33928

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HERTZ LOCAL EDITION
CORP.
8501 WILLIAMS ROAD
ESTERO FL 33928

9590 9402 1512 5362 2735 79

2. Article Number (Transfer from service label)

7010 2780 0003 1943 8821

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
☒
☐ Agent
☐ Addressee

B. Received by (Printed Name)       C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

HERTZ LOCAL EDITION CORP.
8501 WILLIAMS ROAD
ESTERO FL 33928

7010 2780 0003 1943 8821

PS Form 3800, Au

**U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)**

For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage | $ | 1.63
Certified Fee | 3.50
Return Receipt Fee (Endorsement Required) | 
Restricted Delivery Fee (Endorsement Required) | 2.80
Total Postage & Fees | $ | 7.93

Postmark Here
Moore v. Hertz
Local Edition
Corp.

Sent To — HERTZ LOCAL EDITION
Street, Apt No.; CORP.
or PO Box No. 8501 WILLIAMS ROAD
City, State, ZIP+4 ESTERO FL 33928



7010 2780 0003 1943 8845

THE HERTZ CORPORATION
8501 WILLIAMS ROAD
ESTERO FL 33928



7010 2780 0003 1943 8845

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ | 1.63 |
| Certified Fee | | 3.50 |
| Return Receipt Fee (Endorsement Required) | | 2.80 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 7.93 |

Postmark
Here  Moore V. The
Hertz Corporatior

Sent To
THE HERTZ CORPORATION
Street, Apt. No.; 8501 WILLIAMS ROAD
or PO Box No.
City, State, ZIP+4® ESTERO FL 33928

PS Form 3800, Au

ﬡe
*N* APC
ark East, Ste 1000
A 90067

7010 2780 0003 1943 8838

UNITED STATES POSTAGE
PITNEY BOWES
$007.93
02 1P
0000666553
MAILED FROM ZIP CODE 90067

HERTZ LOCAL EDITION TRANSPORTING,
INC.
8501 WILLIAMS ROAD
ESTERO FL 33928

SENDER: *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HERTZ LOCAL EDITION
TRANSPORTING, INC.
8501 WILLIAMS ROAD
ESTERO FL 33928

9590 9402 1512 5362 2735 55

2. Article Number (Transfer from service label)

7010 2780 0003 1943 8838

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

7010 2780 0003 1943 8838

PS

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com®

OFFICIAL USE

Postage    $    1.63
Certified Fee    3.50
Return Receipt Fee
(Endorsement Required)    2.80
Restricted Delivery Fee
(Endorsement Required)
Total Postage & Fees    $   7.93

Postmark Here   Moore v. Hertz
Local Edition
Transporting, Inc.

Sent To   HERTZ LOCAL EDITION
Street, Apt. No.;   TRANSPORTING, INC.
or PO Box No.   8501 WILLIAMS ROAD
City, State, ZIP+4   ESTERO FL 33928

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Bevin Allen Pike (SBN 221936), Orlando Villalba (SBN 232165),<br>Joseph Hakakian (SBN 323011)<br>Capstone Law APC<br>1875 Century Park East, Suite 1000, Los Angeles, California 90067<br>TELEPHONE NO.: (310) 556-4811    FAX NO.: (310) 943-0396<br>ATTORNEY FOR *(Name):* Plaintiff Wendellyn Moore | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**04/29/2019** at 11:05:08 AM<br>Clerk of the Superior Court<br>By Jacqueline J. Walters, Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: The Hall of Justice

CASE NAME:
Wendellyn Moore v. Hertz Local Edition Corp., et al.

| **CIVIL CASE COVER SHEET** | | Complex Case Designation | CASE NUMBER: 37-2019-00022128-CU-OE-CTL |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter  ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:  Judge Timothy Taylor<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☑ Large number of witnesses
   b. ☑ Extensive motion practice raising difficult or novel     e. ☐ Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve            in other counties, states, or countries, or in a federal court
   c. ☑ Substantial amount of documentary evidence          f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):*  Ten (10)
5. This case ☑ is  ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  April 29, 2019
Bevin Allen Pike                                          ▶ *[signature]*
(TYPE OR PRINT NAME)                                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7072 |

| PLAINTIFF(S) / PETITIONER(S): | Wendellyn Moore |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Hertz Local Edition Corp et.al. |
|---|---|

MOORE VS HERTZ LOCAL EDITION CORP [E-FILE]

| **NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE on MANDATORY eFILE CASE** | CASE NUMBER:<br>37-2019-00022128-CU-OE-CTL |
|---|---|

**CASE ASSIGNMENT**

Judge: Timothy Taylor                                         Department: C-72

**COMPLAINT/PETITION FILED:** 04/29/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 10/04/2019 | 09:15 am | C-72 | Timothy Taylor |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

MANDATORY eFILE: Case assigned to mandatory eFile program per CRC 3.400-3.403 and SDSC Rule 2.4.11. All documents must be eFiled at www.onelegal.com. Refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases or guidelines and procedures.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR): THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2019-00022128-CU-OE-CTL    CASE TITLE: Moore vs Hertz Local Edition Corp [E-FILE]

**NOTICE**: **All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
        **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
        **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359),** *and*
        **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | | FOR COURT USE ONLY |
|---|---|---|
| STREET ADDRESS: | 330 West Broadway | |
| MAILING ADDRESS: | 330 West Broadway | |
| CITY, STATE, & ZIP CODE: | San Diego, CA 92101-3827 | |
| BRANCH NAME: | Central | |

PLAINTIFF(S): Wendellyn Moore

DEFENDANT(S): Hertz Local Edition Corp et.al.

SHORT TITLE: MOORE VS HERTZ LOCAL EDITION CORP [E-FILE]

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2019-00022128-CU-OE-CTL |
|---|---|

Judge: Timothy Taylor                    Department: C-72

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process. Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                    ☐ Binding private arbitration

☐ Voluntary settlement conference (private)                    ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                    ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)  _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                    Date: _____

_____                    _____
Name of Plaintiff                    Name of Defendant

_____                    _____
Signature                    Signature

_____                    _____
Name of Plaintiff's Attorney                    Name of Defendant's Attorney

_____                    _____
Signature                    Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 04/30/2019                    | JUDGE OF THE SUPERIOR COURT |

| SDSC CIV-359 (Rev 12-10) | **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION** | Page: 1 |

# EXHIBIT B

1  Robert A. Dolinko (SBN 076256)
   rdolinko@nixonpeabody.com
2  William S. Lisa (SBN 310541)
   wlisa@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 32nd Floor
4  San Francisco, CA 94111
   Tel: 415-984-8200
5  Fax: 415-984-8300

6  Attorneys for Defendant
   HERTZ LOCAL EDITION CORP.
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF SAN DIEGO

10

11  WENDELLYN MOORE, individually, and on         Case No. 37-2019-00022128 CU-OE-CTL
    behalf of other members of the general public
12  similarly situated, and as an aggrieved employee
    pursuant to the Private Attorneys General Act    **CLASS ACTION**
13  ("PAGA"),
                                                     **DEFENDANT HERTZ LOCAL EDITION
14         Plaintiff,                                CORPORATION'S ANSWER TO
                                                     UNVERIFIED CLASS ACTION
15                                                   COMPLAINT**
        vs.
16                                                   Complaint filed:   April 29, 2018
                                                     Trial date:        None Set
17  HERTZ LOCAL EDITION CORP., a Delaware
    corporation; THE HERTZ CORPORATION, a
18  Delaware corporation; and DOES 1 through 10,
    inclusive,
19
           Defendants.
20

21

22

23         1.      Defendant Hertz Local Edition Corporation (hereinafter also "HLE" or "Defendant")

24  hereby responds to the unverified  Class Action Complaint & Enforcement Action ("Complaint")

25  filed on April 29, 2019 by Plaintiff Wendellyn Moore ("Plaintiff").   As used herein, the term

26  "Plaintiff" also means and includes all others similarly situated on whose behalf the Complaint was

27  purportedly filed.

28

4826-1181-3995.1

## GENERAL DENIAL

2.      Pursuant to the provisions of Section 431.30(d) of the California Code of Civil Procedure, Defendant generally denies each and every allegation of the Complaint, including that this action may be maintained as a class action on behalf of others purportedly similarly situated, and/or the general public, and further denies that Plaintiff or anyone else on whose behalf the Complaint is purportedly brought are entitled to damages, statutory penalties, punitive damages, restitution, disgorgement, interest, attorneys' fees or costs, or any other form of legal or equitable relief.

## DEFENSES

In addition, Defendant asserts the defenses and affirmative defenses set forth herein.  By pleading these defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden belongs to Plaintiff.

### AFFIRMATIVE DEFENSES TO ALL CAUSES OF ACTION

### FIRST AFFIRMATIVE DEFENSE

(Failure to State a Claim)

1.      The Complaint, and each purported cause of action in the Complaint, fails to state facts sufficient to constitute a valid claim for relief against any Defendant.

### SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

2.      Defendant alleges, based on information and belief, that Plaintiffs' claims, or portions thereof, are barred by the applicable statutes of limitations, including but not limited to those set forth in California Labor Code Section 203, California Code of Civil Procedure Sections 338, 340 and 343, and California Business and Professions Code Section 17208.

DEFENDANT'S ANSWER TO COMPLAINT

4826-1181-3995.1

## THIRD AFFIRMATIVE DEFENSE

### (No Standing)

3.    Defendant alleges, based on information and belief, that Plaintiff lacks standing to sue Defendant on behalf of herself or other employees, with respect to some or all of the claims asserted in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

### (Good Faith Dispute)

4.    Although Defendant denies it owes any amounts to Plaintiff, or to any other employees, if it should be determined that amounts are owed, then Defendant alleges, based on information and belief, that at all times relevant hereto a reasonable good faith dispute existed as to whether any such amounts were owed to Plaintiff, or to other employees.

## FIFTH AFFIRMATIVE DEFENSE

### (Good Faith Defense)

5.    Defendant alleges, based on information and belief, that at all times relevant to Plaintiff's Complaint, Defendant had good faith defenses, based in law and/or fact, which, if upheld, would preclude any recovery by Plaintiff based on the allegations in the Complaint.

## SIXTH AFFIRMATIVE DEFENSE

### (Laches)

6.    Defendant alleges, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by the doctrine of laches.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

7.    Defendant alleges, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, to the extent Plaintiff has unclean hands with respect to the claims asserted.

-3-

4826-1181-3995.1

## EIGHTH AFFIRMATIVE DEFENSE

### (Waiver/Estoppel/Consent)

8.     Defendant alleges, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, under the equitable doctrines of waiver, estoppel, and/or consent.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

9.     Defendant alleges, based on information and belief, that Plaintiff has failed to mitigate, minimize, or avoid her purported damages. Defendant further alleges that, to the extent any damages could have been mitigated, minimized, or avoided, such amounts should be deducted from any award of damages.

## TENTH AFFIRMATIVE DEFENSE

### (Speculative Damages)

10.     Defendant alleges, based on information and belief, that Plaintiff's purported causes of action for damages are barred because they are speculative and uncertain, and to the extent that any award would constitute unjust enrichment.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Safe Harbor)

11.     Defendant alleges, based on information and belief, that Plaintiff's claims are barred in whole or in part because of Defendant's compliance with all applicable laws, statutes, and regulations, said compliance affording Defendants a safe harbor to any claim under California Business and Professions Code Section 17200, et seq.

## TWELFTH AFFIRMATIVE DEFENSE

### (Practice Not Unfair)

12.     Defendant alleges, based on information and belief, that Plaintiff's claims are barred because Defendant's business practices were not unfair within the meaning of Business and Professions Code Section 17200.  The utility and benefits of Defendant's conduct outweighed

-4-

4826-1181-3995.1

whatever alleged harm or impact it may have had on Plaintiff, or other employees purportedly similarly situated.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Lack of Injury)

13.    Defendant alleges, based on information and belief, that the purported causes of action are barred, in whole or in part, because Plaintiff did not suffer any actual injury as a result of any knowing and intentional violation.

### FOURTEENTH AFFIRMATIVE DEFENSE

(Avoidable Consequences Doctrine)

14.    Defendant is informed and believes, and on that basis alleges, that Plaintiff failed to take reasonable advantage of available procedures to prevent and correct any alleged wage and hour violations, and, therefore, Plaintiff's damages claims are barred, in whole or part, by the avoidable consequences doctrine.

### FIFTEENTH AFFIRMATIVE DEFENSE

(Failure to Obtain Valid Wage Assignment)

15.    Plaintiff, as representative for the other class members, may not pursue an unpaid wage claim on behalf of the other class members because she failed to obtain a valid wage assignment for each of the other class members.  Cal. Labor Code Sec. 300.

### SIXTEENTH AFFIRMATIVE DEFENSE

(Substantial Compliance)

16.    Defendant alleges, based on information and belief, that Plaintiffs' causes of action and claims for damages and/or penalties are barred, or any such award of damages or penalties must be reduced, because Defendant substantially complied with the applicable requirements of the California Labor Code and applicable Industrial Welfare Commission Wage Orders.

DEFENDANT'S ANSWER TO COMPLAINT

4826-1181-3995.1

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Consent)

17.    Defendant alleges, based on information and belief, that Plaintiff was provided with and had the opportunity to take timely meal periods or rest periods, but chose not to do so.

## EIGHTEENTH AFFIRMATIVE DEFENSE

(Failure to Meet Requirements for Class Action)

18.    Defendant alleges, based on information and belief, that Plaintiff's claims will not support class treatment because: they do not raise questions of law or fact that predominate over individual legal or factual issues; they are not typical of the claims of the putative class; Plaintiff is not an adequate or proper representative of the putative class; and/or the action fails to satisfy the legal standards for a class action.

## NINETEENTH AFFIRMATIVE DEFENSE

(Failure to Properly Exhaust Administrative Remedies)

19.    Defendant alleges that Plaintiff's claims are barred, in whole or in part, based upon Plaintiff's failure to properly exhaust her administrative remedies or prerequisites before commencing this action.

## TWENTIETH FIRST AFFIRMATIVE DEFENSE

(Multiple Recovery)

20.    Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff seeks multiple recoveries for the same alleged wrong or wrongs.

## TWENTY FIRST AFFIRMATIVE DEFENSE

(Excessive Civil Penalties)

21.    In the event Plaintiff is awarded civil penalties under the California Labor Code Private Attorneys General Act ("PAGA") on behalf of herself and/or other purportedly aggrieved employees as claimed in the Complaint, then Defendant is informed and believes that any such award is barred, or should be reduced, on the grounds that such award would be unjust, arbitrary, oppressive, or confiscatory within the meaning of California Labor Code section 2699(e)(2).

-6-

4826-1181-3995.1

1    WHEREFORE, Defendant Hertz Local Edition Corporation prays judgment as follows:

2       1.       That the Complaint be dismissed with prejudice and in its entirety, and that Plaintiff

3    and the purported class members take nothing thereby;

4       2.       That Defendant be awarded its costs of suit, including reasonable attorneys' fees; and

5       3.       That Defendant be awarded such other and further relief as the Court deems just and

6    proper.

7    Dated: May 30, 2019                                    NIXON PEABODY LLP

8

9                                    By: _____

10                                        Robert A. Dolinko
                                          William S. Lisa
11                                        Attorneys for Defendant
                                          HERTZ LOCAL EDITION
12                                        CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          -7-

4826-1181-3995.1

1    **PROOF OF SERVICE**

2

3    I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, 32nd Floor, San Francisco, California 94111-

4    3600. On this date, I served the following document(s):

5    **DEFENDANT HERTZ LOCAL EDITION CORPORATION'S ANSWER TO UNVERIFIED CLASS ACTION COMPLAINT**

6

7    on the parties stated below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

8    _X_ :   By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited

9    with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee

10    following ordinary business practices.

11    ___:     By Personal Service — I caused each such envelope to be given to a courier messenger to personally deliver to the office of the addressee.

12

13    ___:     By Overnight Courier/Express Mail — I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the

14    addressee on the next business day.

15    ___:     By Electronic Mail/E-Filing — I caused each such document(s) to be served electronically on the person(s) listed below via their electronic email address listed.

16    Addressee(s)

17    Bevin Allen Pike                    *Attorneys for Plaintiff*
     Orlando Villalba                    *Wendellyn Moore*

18    Joseph Hakakian
     CAPSTONE LAW APC

19    1875 Century Park East, Suite 1000
     Los Angeles, CA 90067

20    Phone:  310 556-4811
     Fax:  310 943-0396

21    Bevin.Pike@capstonelawyers.com
     Orlando.Villala@capstonelawyers.com

22    Joseph.Hakakian@capstonelawyers.com

23

24

25    I declare under penalty of perjury that the foregoing is true and correct. Executed on May 30, 2019 at San Francisco, California.

26

27    _____
     Iris Leal

28

4835-8833-6024.1

1  Robert A. Dolinko (SBN 076256)
   rdolinko@nixonpeabody.com
2  William S. Lisa (SBN 310541)
   wlisa@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center, 32nd Floor
4  San Francisco, CA 94111
   Tel: 415-984-8200
5  Fax: 415-984-8300

6  Attorneys for Defendant
   THE HERTZ CORPORATION
7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF SAN DIEGO

10

11  WENDELLYN MOORE, individually, and on        Case No. 37-2019-00022128 CU-OE-CTL
    behalf of other members of the general public
12  similarly situated, and as an aggrieved employee
    pursuant to the Private Attorneys General Act   **CLASS ACTION**
13  ("PAGA"),
                                                     **DEFENDANT THE HERTZ**
14       Plaintiff,                                  **CORPORATION'S ANSWER TO**
                                                     **UNVERIFIED CLASS ACTION**
15                                                   **COMPLAINT**
         vs.
16                                                   Complaint filed:    April 29, 2018
    HERTZ LOCAL EDITION CORP., a Delaware           Trial date:         None Set
17  corporation; THE HERTZ CORPORATION, a
    Delaware corporation; and DOES 1 through 10,
18  inclusive,

19       Defendants.

20

21

22

23       1.    Defendant The Hertz Corporation (hereinafter also "Hertz" or "Defendant") hereby

24  responds to the unverified Class Action Complaint & Enforcement Action ("Complaint") filed on

25  April 29, 2019 by Plaintiff Wendellyn Moore ("Plaintiff"). As used herein, the term "Plaintiff" also

26  means and includes all others similarly situated on whose behalf the Complaint was purportedly filed.

27  Nothing set forth herein shall suggest that Hertz was ever Plaintiff's employer, that it was responsible

28  for the actions described in Plaintiff's Complaint, or that any community of interest exists between

4826-1181-3995.1

Defendant's employees and the employees of Plaintiff's employer, Defendant Hertz Local Edition Corp.

## GENERAL DENIAL

2.     Pursuant to the provisions of Section 431.30(d) of the California Code of Civil Procedure, Defendant generally denies each and every allegation of the Complaint, including that this action may be maintained as a class action on behalf of others purportedly similarly situated, and/or the general public, and further denies that Plaintiff or anyone else on whose behalf the Complaint is purportedly brought are entitled to damages, statutory penalties, punitive damages, restitution, disgorgement, interest, attorneys' fees or costs, or any other form of legal or equitable relief.

## DEFENSES

In addition, Defendant asserts the defenses and affirmative defenses set forth herein.  By pleading these defenses, Defendant does not assume the burden of proving any fact, issue, or element of a cause of action where such burden belongs to Plaintiff.

### AFFIRMATIVE DEFENSES TO ALL CAUSES OF ACTION

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.     The Complaint, and each purported cause of action in the Complaint, fails to state facts sufficient to constitute a valid claim for relief against any Defendant.

### SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

2.     Defendant alleges, based on information and belief, that Plaintiffs' claims, or portions thereof, are barred by the applicable statutes of limitations, including but not limited to those set forth in California Labor Code Section 203, California Code of Civil Procedure Sections 338, 340 and 343, and California Business and Professions Code Section 17208.

3.

DEFENDANT HERTZ'S ANSWER TO COMPLAINT

4826-1181-3995.1

**THIRD AFFIRMATIVE DEFENSE**

(No Standing)

4.      Defendant alleges, based on information and belief, that Plaintiff lacks standing to sue Defendant on behalf of herself or other employees, with respect to some or all of the claims asserted in the Complaint.

**FOURTH AFFIRMATIVE DEFENSE**

(Good Faith Dispute)

5.      Although Defendant denies it owes any amounts to Plaintiff, or to any other employees, if it should be determined that amounts are owed, then Defendant alleges, based on information and belief, that at all times relevant hereto a reasonable good faith dispute existed as to whether any such amounts were owed to Plaintiff, or to other employees.

**FIFTH AFFIRMATIVE DEFENSE**

(Good Faith Defense)

6.      Defendant alleges, based on information and belief, that at all times relevant to Plaintiff's Complaint, Defendant had good faith defenses, based in law and/or fact, which, if upheld, would preclude any recovery by Plaintiff based on the allegations in the Complaint.

**SIXTH AFFIRMATIVE DEFENSE**

(Laches)

7.      Defendant alleges, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, by the doctrine of laches.

**SEVENTH AFFIRMATIVE DEFENSE**

(Unclean Hands)

8.      Defendant alleges, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, to the extent Plaintiff has unclean hands with respect to the claims asserted.

9.

-3-

4826-1181-3995.1

**EIGHTH AFFIRMATIVE DEFENSE**

(Waiver/Estoppel/Consent)

10.    Defendant alleges, based on information and belief, that Plaintiff's Complaint, and each purported cause of action alleged therein, is barred, in whole or in part, under the equitable doctrines of waiver, estoppel, and/or consent.

**NINTH AFFIRMATIVE DEFENSE**

(Failure to Mitigate)

11.    Defendant alleges, based on information and belief, that Plaintiff has failed to mitigate, minimize, or avoid her purported damages. Defendant further alleges that, to the extent any damages could have been mitigated, minimized, or avoided, such amounts should be deducted from any award of damages.

**TENTH AFFIRMATIVE DEFENSE**

(Speculative Damages)

12.    Defendant alleges, based on information and belief, that Plaintiff's purported causes of action for damages are barred because they are speculative and uncertain, and to the extent that any award would constitute unjust enrichment.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Safe Harbor)

13.    Defendant alleges, based on information and belief, that Plaintiff's claims are barred in whole or in part because of Defendant's compliance with all applicable laws, statutes, and regulations, said compliance affording Defendants a safe harbor to any claim under California Business and Professions Code Section 17200, et seq.

**TWELFTH AFFIRMATIVE DEFENSE**

(Practice Not Unfair)

14.    Defendant alleges, based on information and belief, that Plaintiff's claims are barred because Defendant's business practices were not unfair within the meaning of Business and Professions Code Section 17200.  The utility and benefits of Defendant's conduct outweighed

-4-

4826-1181-3995.1

1    whatever alleged harm or impact it may have had on Plaintiff, or other employees purportedly

2    similarly situated.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Lack of Injury)

5    15.    Defendant alleges, based on information and belief, that the purported causes of action

6    are barred, in whole or in part, because Plaintiff did not suffer any actual injury as a result of any

7    knowing and intentional violation.

### FOURTEENTH AFFIRMATIVE DEFENSE

(Avoidable Consequences Doctrine)

10    16.    Defendant is informed and believes, and on that basis alleges, that Plaintiff failed to

11    take reasonable advantage of available procedures to prevent and correct any alleged wage and hour

12    violations, and, therefore, Plaintiff's damages claims are barred, in whole or part, by the avoidable

13    consequences doctrine.

### FIFTEENTH AFFIRMATIVE DEFENSE

(Failure to Obtain Valid Wage Assignment)

16    17.    Plaintiff, as representative for the other class members, may not pursue an unpaid

17    wage claim on behalf of the other class members because she failed to obtain a valid wage

18    assignment for each of the other class members.  Cal. Labor Code Sec. 300.

### SIXTEENTH AFFIRMATIVE DEFENSE

(Substantial Compliance)

21    18.    Defendant alleges, based on information and belief, that Plaintiffs' causes of action

22    and claims for damages and/or penalties are barred, or any such award of damages or penalties must

23    be reduced, because Defendant substantially complied with the applicable requirements of the

24    California Labor Code and applicable Industrial Welfare Commission Wage Orders.

DEFENDANT HERTZ'S ANSWER TO COMPLAINT

4826-1181-3995.1

1

## SEVENTEENTH AFFIRMATIVE DEFENSE

2

(Consent)

3    19.    Defendant alleges, based on information and belief, that Plaintiff was provided with

4    and had the opportunity to take timely meal periods or rest periods, but chose not to do so.

5

## EIGHTEENTH AFFIRMATIVE DEFENSE

6

(Failure to Meet Requirements for Class Action)

7    20.    Defendant alleges, based on information and belief, that Plaintiff's claims will not

8    support class treatment because: they do not raise questions of law or fact that predominate over

9    individual legal or factual issues; they are not typical of the claims of the putative class; Plaintiff is

10    not an adequate or proper representative of the putative class; and/or the action fails to satisfy the

11    legal standards for a class action.

12

## NINETEENTH AFFIRMATIVE DEFENSE

13

(Failure to Properly Exhaust Administrative Remedies)

14    21.    Defendant alleges that Plaintiff's claims are barred, in whole or in part, based upon

15    Plaintiff's failure to properly exhaust her administrative remedies or prerequisites before

16    commencing this action.

17

## TWENTIETH FIRST AFFIRMATIVE DEFENSE

18

(Multiple Recovery)

19    22.    Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff seeks

20    multiple recoveries for the same alleged wrong or wrongs.

21

## TWENTY FIRST AFFIRMATIVE DEFENSE

22

(Excessive Civil Penalties)

23    23.    In the event Plaintiff is awarded civil penalties under the California Labor Code

24    Private Attorneys General Act ("PAGA") on behalf of herself and/or other purportedly aggrieved

25    employees as claimed in the Complaint, then Defendant is informed and believes that any such award

26    is barred, or should be reduced, on the grounds that such award would be unjust, arbitrary,

27    oppressive, or confiscatory within the meaning of California Labor Code section 2699(e)(2).

28

-6-

4826-1181-3995.1

## TWENTY SECOND AFFIRMATIVE DEFENSE

(Incorrect Employer)

24.    Plaintiffs' Complaint, and each and every purported cause of action therein, is barred as to this answering Defendant because The Hertz Corporation is not now and never has been the employer of Plaintiff, it was not and is not responsible for the actions described in Plaintiff's Complaint, and no community of interest exists between Defendant's employees and the employees of Plaintiff's employer, Defendant Hertz Local Edition Corp.

WHEREFORE, Defendant The Hertz Corporation prays judgment as follows:

1.    That the Complaint be dismissed with prejudice and in its entirety, and that Plaintiff and the purported class members take nothing thereby;

2.    That Defendant be awarded its costs of suit, including reasonable attorneys' fees; and

3.    That Defendant be awarded such other and further relief as the Court deems just and proper.

Dated: May 30, 2019                          NIXON PEABODY LLP


                                             By: _____
                                                 Robert A. Dolinko
                                                 William S. Lisa
                                                 Attorneys for Defendant
                                                 THE HERTZ CORPORATION

DEFENDANT HERTZ'S ANSWER TO COMPLAINT

4826-1181-3995.1

**PROOF OF SERVICE**

I, the undersigned, certify that I am employed in the City and County of San Francisco, California; that I am over the age of eighteen years and not a party to the within action; and that my business address is One Embarcadero Center, 32nd Floor, San Francisco, California 94111-3600. On this date, I served the following document(s):

**DEFENDANT THE HERTZ CORPORATION'S ANSWER TO UNVERIFIED CLASS ACTION COMPLAINT**

on the parties stated below, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below by the following means of service:

 X : By First-Class Mail — I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence is deposited with the United States Postal Service on the same day as collected, with first-class postage thereon fully prepaid, in San Francisco, California, for mailing to the office of the addressee following ordinary business practices.

   : By Personal Service — I caused each such envelope to be given to a courier messenger to personally deliver to the office of the addressee.

   : By Overnight Courier/Express Mail — I caused each such envelope to be given to an overnight mail service at San Francisco, California, to be hand delivered to the office of the addressee on the next business day.

   : By Electronic Mail/E-Filing — I caused each such document(s) to be served electronically on the person(s) listed below via their electronic email address listed.

Addressee(s)

Bevin Allen Pike                     *Attorneys for Plaintiff*
Orlando Villalba                      *Wendellyn Moore*
Joseph Hakakian
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, CA 90067
Phone: 310 556-4811
Fax: 310 943-0396
Bevin.Pike@capstonelawyers.com
Orlando.Villala@capstonelawyers.com
Joseph.Hakakian@capstonelawyers.com

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 30, 2019 at San Francisco, California.

Iris Leal

4835-8833-6024.1

# eFiling Under Court Clerk Review

| | |
|---|---|
| **Order #** | 13301046 |
| **Submitted** | 5/31/2019 10:06 AM PT by Karly McShane |
| **Case** | Moore vs Hertz Local Edition Corp [E-FILE]<br>#37-2019-00022128-CU-OE-CTL |
| **Court** | Superior Court of California, San Diego County<br>(Central) |
| **Client billing** | NIXPESF-31164 |
| **Court transaction #** | 2651422 |

## Documents

- Answer
- Answer